THOMAS B. ANDERSON et al., Appellants, v 50 EAST 72ND STREET CONDOMINIUM et al., Respondents.

First Department, July 10, 1986

### APPEARANCES OF COUNSEL

*Martin Stein* of counsel *(Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for appellants.

*Peter Brown* of counsel *(Brown, Raysman & Millstein,* attorneys), for 50 East 72nd Street Condominium, respondent.

*Ludwig A. Saskor* of counsel *(Smith, Steibel, Alexander & Saskor, P. C.,* attorneys), for Victoria M. McHugh Murphy and another, respondents.

### OPINION OF THE COURT

ELLERIN, J.

Plaintiffs-appellants seek to invalidate a standard "right of first refusal" provision contained in the offering plan declaration and bylaws of the defendant condominium on the ground that it violates the Rule Against Perpetuities as set forth in EPTL 9-1.1 (b). We hold that the rule does not invalidate the preemptive right in question.

In the instant case, defendants Victoria and Patrick Murphy are the owners of condominium unit apartment No. 5C at 50 East 72nd Street. The unit was purchased pursuant to a condominium offering plan, and subject to bylaws, which provide that in the event an owner of a unit wishes to sell that unit, the board of managers of the condominium, on behalf of all other unit owners, must first be given an opportunity to purchase the unit, or produce a purchaser who will purchase the unit, at the same price and on the same terms as offered by the proposed purchaser. The board of managers must exercise this right of first refusal within 30 days of notification by the seller. While not referring to any particular provision, the bylaws specifically state that they apply in their entirety to "all present and future owners", and the deed covering the unit provides that the "terms, conditions, covenants and provisions of the Declaration and of the By-

Laws * * * shall bind any person having at any time any interest or estate in the Unit".

In February 1985, the Murphys entered into a contract to sell their condominium unit to plaintiffs-appellants Thomas B. Anderson and Marc P. Schappell. The buyers, one of whom is engaged in the real estate field, concede that they were aware of the right of first refusal at the time the contract was signed. Indeed, the contract itself expressly states that the seller has advised the buyer that the board of managers has a right of first refusal applicable to the sale and that if "it is exercised, the Down Payment shall be refunded to the Buyer, after which neither party shall have any further rights under this contract".

The sellers subsequently notified the condominium board of managers of the proposed sale, and on May 15, 1985, nine days before the proposed closing with plaintiffs was to take place, the board met and decided to exercise its preemptive right. The instant action was commenced immediately thereafter against the condominium board, the sponsor of the offering plan and its general partners, and the Murphys.

While the complaint asserts causes of action for breach of contract (against the Murphys) and for inducing that breach (against all the other defendants), and variously seeks damages, specific performance and injunctive relief, the gravamen of the action is the request for a declaratory judgment "that the right of first refusal contained in The Condominium by-laws is void and unenforceable" by reason of the Rule Against Perpetuities.

In this State, the "Rule Against Perpetuities" is statutorily codified in EPTL 9-1.1. Subdivision (a) of that section deals with the limitation upon suspension of the power of alienation of an estate in property, while subdivision (b) codifies the rule prohibiting "remoteness of vesting" of such an estate. The latter subdivision, upon which plaintiffs rely, provides as follows: "(b) No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved."

It is contended that the "right of first refusal" here at issue violates this rule because it is an interest in property which may vest beyond the permissible period. In denying plaintiffs' motion for a preliminary injunction, Special Term held that the statutory Rule Against Perpetuities should not operate to

automatically void the preemptive option in question but, rather, that its validity should be tested by the common-law rule against restraints on alienation whereby the reasonableness of the restraint is the determinative factor (129 Misc 2d 295). We affirm.

Plaintiffs, both at Special Term and before this court, strenuously argued that the decision of the Court of Appeals in *Buffalo Seminary v McCarthy* (58 NY2d 867, *affg on opn below* 86 AD2d 435) is controlling. In that case, an option which granted the holder or his successors or assigns an unlimited right to buy the owner's land at any time was held void because it violated the statutory rule against remoteness in vesting. The attempt to extend the holding in *Buffalo Seminary,* which deals with an unlimited option, to cover the preemptive right of first refusal here at issue is rendered untenable by the markedly different character of such right.

While preemptive rights are sometimes labeled or mischaracterized as "options", they are clearly distinguishable from unlimited options in gross of the type dealt with in *Buffalo Seminary (supra).* A preemption has been said to differ materially from an ordinary option as follows: "An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone." (6 American Law of Property § 26.64, at 507 [1952].)

This distinction is vitally important when considered in conjunction with the purposes and policy considerations which gave rise to the Rule Against Perpetuities. The rule evolved to prevent real property from being fettered with future interests so remote that the alienability of the land and its marketability would be impaired, preventing its full utilization for the benefit of society at large as well as of its current owners. An option, such as in *Buffalo Seminary (supra),* impairs the value and use of the land, as it forbids, both by its terms and by the risks involved, the improvement of the land. It also restrains the marketability by requiring any potential buyer of the land to also purchase subject to the option, which may be exercised at any time. A preemptive right, on the other

hand, especially with respect to a condominium owner, does not impair the value or use of the land so as to restrain its alienability. The owner is not restricted in the use of the property and can never be forced to sell. It is only when the owner freely decides to sell, that the preemptive right may be invoked, and if exercised, the owner-seller will still receive the same price and terms as in the bargain he struck. Moreover, the board cannot hold up the sale, as it must exercise the preemptive right promptly, in this case within 30 days.

The significant differences between an option and a preemptive right, both in character and effect, were stressed by the Court of Appeals in its recent decision in *Metropolitan Transp. Auth. v Bruken Realty Corp.* (125 Misc 2d 497, *affd* 112 AD2d 809, *affd* 67 NY2d 156), in which it concluded that a different standard should be used in determining the validity of a preemptive right, or right of first refusal, than applies to options in gross. While the precise holding of the case is fashioned to address the specific facts therein involved—i.e., a preemptive right to buy freight yard lots granted to the holder by a governmental entity—and, thus, is phrased as determining that the rule against remote vesting does not apply to preemptive rights in commercial and governmental transactions, the opinion makes clear that the reach of its determination would extend to a preemptive right of first refusal in a condominium plan such as is here in issue.

In his comprehensive and sensitive analysis of the relevant authorities and the important policy considerations involved, Judge Simons approvingly notes that the utility of preemptive rights in modern legal transactions justifies excepting such rights from the operation of the rule against remote vesting. In discussing the cases which have upheld the validity of preemptive rights, note is taken of the fact that: "The holder's rights have been recognized because enforcement did not violate the underlying purposes of the rule against remote vesting. Quite the contrary, enforcement of the preemptive right in such cases encouraged the holder to develop the property by insuring his opportunity to benefit from development and to recapture his investment in it. *For similar reasons recent decisions have held that, because the management of condominium developments has a valid interest not only in securing the occupancy of the units but also in protecting the ownership of the common areas and the underlying fee, its preemptive rights to repurchase units before sale to third parties should be excepted from the operation of the rule (see,*

*e.g., Cambridge Co. v East Slope Inv. Corp.,* 700 P2d 537 [Col]; *Anderson v 50 E. 72nd St. Condominium,* 129 Misc 2d 295; *see generally,* Note, *Condominiums and the Right of First Refusal,* 48 St John's L Rev 1146, 1149 *et seq.)."* (67 NY2d, at p 165 [emphasis added].)

Other jurisdictions have similarly sustained the validity of preemptive rights, finding them neither a restraint upon alienation nor violative of the policy considerations underlying the Rule Against Perpetuities which "is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil." *Weber v Texas Co.,* 83 F2d 807, 808, *cert denied* 299 US 561; *Rourke Corp. v Ferrero Constr. Co.,* 64 Md App 694, 498 A2d 689 [1985]; *Robroy Land Co. v Prather,* 95 Wn 2d 66, 622 P2d 367 [1980]; *Shiver v Benton,* 251 Ga 284, 304 SE2d 903 [1983]; *see also,* Leach, Perpetuities in a Nutshell, 51 Harv L Rev 638, 660; 6 American Law of Property §§ 26.64-26.67; *cf. Cortese v Connors,* 1 NY2d 265.)

In light of the comparatively recent emergence and widespread use of new and creative ownership arrangements of property, such as condominiums and cooperatives, that were uncontemplated in the postfeudal agrarian period in which the then progressive Rule Against Perpetuities had its genesis, this modern trend of holding the "right of first refusal" not to be subject to that rule appears to be more consistent with the realities of contemporary commerce and economics than the authorities holding to the contrary. In that regard, we are aware of the Third Department case of *Smith v Smith* (116 AD2d 810 [Jan. 2, 1986]) which takes the opposite view. While the peculiar facts of that case involve "restrictive options" granted each to the other by tenants in common of a parcel of real property, it must be noted that that case was decided prior to the decision by the Court of Appeals in *Bruken (supra)* and to the extent that the *Smith* decision holds that a right of first refusal is subject to the Rule Against Perpetuities we decline to follow it.

In *Bruken (supra,* p 167), the Court of Appeals delineated the test to be used in determining the validity of a preemptive right under the common-law prohibiting unreasonable restraints on alienation. It is the reasonableness of the restraint, judged by its duration, price and purpose, that is determina-

tive. Significantly, the duration of the restraint is not measured by the life of the preemptive right, but rather by the period during which the right can be exercised once the owner decides to sell. *(See, Metropolitan Transp. Auth. v Bruken Realty Corp., supra,* p 167, and authorities therein cited.) In this case, the board of the condominium is required to exercise the right within 30 days after notification by the owner of the unit and must close within 45 days of the notice of election. Time limitations of such duration are clearly reasonable. As to price, the board or its designee must purchase at the same price and on the same terms as those agreed to in the proposed sale to the third party. Similar conditions as to duration and price have been upheld as reasonable. *(See, Rowlee v Dietrich,* 88 AD2d 751; *Witt v Disque,* 79 AD2d 419; Restatement of Property § 413 [1944].)

The purpose of such preemptive right is beneficially related to the peculiar characteristics of condominium ownership, whereby in addition to ownership of the particular unit involved, each owner also has an undivided interest in both the common areas and underlying fee. *(See,* 4B Powell, Real Property ¶ 633.14 [2], at 826.4.) There has been no showing or intimation whatsoever by plaintiffs that the right of first refusal here in issue is designed for any other purpose or has been sought to be used for some improper purpose. On the contrary, the clause is one that is generally used in connection with condominium management and has been held to serve a valid interest. *(See, Metropolitan Transp. Auth. v Bruken Realty Corp., supra,* p 165; *Cambridge Co. v East Slope Inv. Corp.,* — Col —, 700 P2d 537 [1985].)

Accordingly, we hold that the preemptive right of first refusal granted to defendant condominium board to purchase, at the same price and terms, a unit offered for sale by an owner, does not constitute an unreasonable restraint on the alienation of such unit and is not subject to invalidation by the statutory "Rule Against Perpetuities" for remote vesting. The order of the Supreme Court, New York County (Eugene R. Wolin, J.), entered on or about June 28, 1985, which denied the plaintiffs' motion for a preliminary injunction enjoining the sale of the condominium unit owned by defendants Victoria and Patrick Murphy on that basis, should be affirmed, without costs.

Asch, J. P. (dissenting). The majority has taken the position that the "right of first refusal" involved in this appeal is valid.

I disagree. I read the cases in New York as supporting my view. It is quite clear, however, that the final legal answer must come from the Court of Appeals or the Legislature. Since I believe that there are significant public policy considerations which support the position I have taken, I dissent.

By its ruling in *Metropolitan Transp. Auth. v Bruken Realty Corp.* (67 NY2d 165), the Court of Appeals has described the circumstances under which it chooses not to invalidate a right of first refusal as violative of the Rule Against Perpetuities and its associated doctrines. In explicitly circumscribed language, the court has carefully refrained from declaring that the perpetuities restriction never has application to a right of first refusal.

The final dispositive paragraphs of *Bruken (supra,* p 168) state clearly:

"Finally, as we have stated, the preemptive right in this case clearly served a beneficial purpose and given its reasonableness in terms of duration and price, it should be enforced.

"In sum, we hold that the rule against remote vesting does not apply to preemptive rights in commercial and governmental transactions, that their validity is to be judged by applying the rule against unreasonable restraints and that the preemptive right granted Delbay by the State was under all the circumstances a reasonable restriction on the alienability of the freight yard lots."

That case involved the purchase of the stock of the Long Island Railroad from the Pennsylvania Railroad for $65 million. As part of the consideration, it gave a subsidiary corporation of the railroad an "option agreement" to buy 12 lots in the freight yard if the MTA decided that it did not need the property. The "option" expired if it was not exercised within 99 years. The court stated (67 NY2d, at p 160) that the issue presented by the appeal was whether the "option agreement", which it characterized as a preemptive right, "violated the prohibition against remote vesting stated in New York's Rule against Perpetuities *(see,* EPTL 9-1.1 [b])." The Court of Appeals decided that the preemptive right involved in the case before them was valid. It explained the essential basis for its ruling, as follows: "Application of the rule against remote vesting here would defeat the policies underlying the rule because it would invalidate an agreement which promoted the use and development of the property while, at the same time, imposing only a minor impediment to free transferability." (67

NY2d, at p 166.) Then, the Court of Appeals asserted that the validity of the preemptive right must be assessed by applying the common-law rule prohibiting *unreasonable* restraints.

In *Bruken (supra),* the Court of Appeals relaxed the traditional rules to permit certain commercial and governmental land transactions, in effect seeking to bolster the underlying purposes of the perpetuity doctrines. However, to water down the application of the perpetuity doctrines in the case before us would be counterproductive, giving judicial sanction to a device for perpetuating discrimination in private housing. Judged by such a standard it is my belief that the right of first refusal, which is the subject of the appeal before us, should be invalidated.

The Rule Against Perpetuities is frequently viewed as a regressive relic of the dim and distant past, a principle to be avoided or evaded, if at all possible. This is unfortunate because the rule was a necessary response, after the Statute of Uses in 1535 and the Statute of Wills in 1540, to the attempt by those owning property to restrict future ownership and distribution of land. Property interests could be created which would cause uncertainty for hundreds of years after their creation, restricting the transferability of the property, reducing its ability to be sold, preventing its complete utility to present owners and to the public. The Duke of Norfolk's case *(Howard v Norfolk,* 22 ER 931 [1682]) in which the Rule Against Perpetuities, a progressive doctrine, was at last formulated, was designed to strike a balance between the needs of future generations to shape their property rather than be bound by the "dead hand" of past generations. We are living today in a period when new property interests are emerging and these interests should not be limited by the restrictive condition imposed by prior owners. The Rule Against Perpetuities protects present and future generations from the restraints sought to be imposed by past owners. In my view, its application should not be discouraged under the present circumstances.

This appeal raises two basic questions. The first is whether the Rule Against Perpetuities applies to the right of first refusal given to the board of a condominium association. The second question, assuming that the Rule Against Perpetuities applies, is whether the period of time for which the right of first refusal could be exercised violated the rule or whether it constitutes an unreasonable restraint on alienation.

What is sometimes forgotten is that the Rule Against Perpetuities is different from a restraint on alienation. In the matter before us, we are concerned with both.

Many cases are based upon a misapprehension of the applicable law. "The tying up of property, the taking it out of commerce, can be accomplished either, first, by restraining the alienation of interest in it, or, secondly, by postponing to a remote period the arising of future interest. To guard effectually against this evil, as the law considered it, both these methods had to be provided against. The law provided against the first by the doctrine that all interests should be alienable; it provided against the second by the doctrine that all interests must arise within certain limits,—that is, by the Rule Against Perpetuities. These two doctrines, though having originally a common purpose, have had a separate development. The attempts to combine them have led to much confusion." (Gray, The Rule Against Perpetuities § 119, at 114 [4th ed].)

The Court of Appeals, in *Metropolitan Transp. Auth. v Bruken Realty Corp. (supra)* has sought to dispel the miasma of misunderstanding surrounding the rule. The court has pointed out that two of the rules prohibiting control over the transferability of property for too long a period of time are incorporated in EPTL 9-1.1 as the Rule Against Perpetuities. The court has termed this the "statutory rule". Additionally, there is a third rule which invalidates those conveyances which impose unreasonable restraints on alienation, which is referred to as the "common-law rule". "While the statutory rule is inflexible, measured solely by the passage of time, the common law rule is applied by considering the reasonableness of the restraint. Whether a restraint on the disposition of property is unreasonable is a question of fact depending upon its purpose, duration and, where applicable, the designated method for fixing the purchase price". *(Metropolitan Transp. Auth. v Bruken Realty Corp., supra,* pp 161-162.)

The New York Rule Against Perpetuities, codified in 1965, is embodied in EPTL 9-1.1 (b) and provides, in pertinent part, as follows: "No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved."

The case of *Smith v Smith* (116 AD2d 810), decided by the Appellate Division, Third Department, on January 2, 1986,

and cited in *Bruken (supra),* is closely analogous. In that case, the court held (p 811) that an agreement containing a perpetual "right of first refusal" was "in violation of the rule against perpetuities" and, therefore, void.

This court, in *Anasae Realty Corp. v Firestone* (103 AD2d 707) reversed the lower court's declaration that a right of preemption was void under the rule on the grounds that it appeared that the preemption would be exercised within the period of the applicable measuring lives. Thus, *sub silentio,* this court recognized that preemptions are subject to the rule.

Special Term, in its decision herein (129 Misc 2d 295), at several points conceded that a strict application of the Rule Against Perpetuities would render the right of first refusal at issue invalid, but nevertheless chose to apply a "reasonableness" test, as did the Court of Appeals in *Bruken (supra),* with respect to preemptive rights in commercial and governmental transactions.

If public policy dictates that the Rule Against Perpetuities should not apply to restrictions on the sale of condominiums, perhaps such determination should be made by the Legislature, and not the court. As the Court of Appeals recently recognized in *Matter of Walker* (64 NY2d 354) certain rules limiting the disposition of property must be enforced as an expression of State public policy, despite the court's subjective view of the soundness of such policy. Thus, the court stated that "the law permits a person * * * to dispose of property to any person in any manner and for any object or purpose so long as such disposition is not illegal or against public policy" but that "the courts will not enforce legacies and devises when enforcement would violate legal rules on the disposition of property such as the rule against perpetuities" *(Matter of Walker, supra,* at pp 357, 359). The court noted (pp 358-359): "Notwithstanding testator's intent, the legacy may not be given effect because we conclude that to do so would be contrary to the public policy of New York. We do not make that determination out of any personal sense of what is right for these litigants or of what satisfies the general public interest. The courts have no power to invalidate legacies or contracts because of their subjective view of what is sound policy or good policy."

Like the option involved in *Buffalo Seminary v McCarthy* (86 AD2d 435, *affd* 58 NY2d 867) the right of first refusal in the instant action contains no limitation on duration nor

words suggesting that the parties intended the extent of its life to be anything other than indefinite. In fact, footnote 6 on pages 442 and 443 of Justice Hancock, Jr.'s decision in *Buffalo Seminary*, adopted by the Court of Appeals, expressly disapproved a lower court's ruling which had refused to apply the Rule Against Perpetuities to a right of first refusal: "The court in *Izzo v Brooks* (106 Misc 2d 743, 751-754), while stating that an option which creates a contingent equitable interest would be within the rule against remote vesting, interpreted the *pre-emptive option* there as creating a vested interest subject to defeasance, thereby avoiding application of the statute. *Options are generally regarded as creating contingent equitable interests and we find no support for the court's construction* (see Ann., 66 ALR3d 1294, 1299; Simes, Future Interests [2d ed], § 132, p 281; § 138, p 304; compare cases cited in Ann., 40 ALR3d 920, § 3, [b], pp 929-931, considering conveyances upon conditions subsequent involving pre-emptive options). The rule against perpetuities applies not to the immediate contractual right to exercise the option but to the future interest which may vest if and when the option is exercised." (Emphasis added; *see also,* discussion in *Metropolitan Transp. Auth. v Bruken Realty Corp., supra,* at p 164.)

The form and prerequisites of ownership may seem inviolate and unchanging to us. However, even a superficial examination of Anglo-American legal history since 1066 exhibits an incredible volatility in the law of property. The feudal agricultural system based on the rendition of goods and services in return for the use of land, the separation of naked title from beneficial enjoyment of property which came in the wake of the Statute of Uses, the acceleration of this division as a consequence of the commercial and then industrial revolutions, the control of corporate property by the management group instead of shareholders, all evidence some of the changes in the characteristics of property. These changes have reflected a shift in the power of different economic groups at different times as well as the pressures of emerging social and economic needs. Of course, the inventiveness of lawyers has kept pace by coming up with the concepts and institutions to deal with the new social situations. The need to keep the control and the character of property fluid was never more important than it is today. Ecological demands, the increase in population, the finite nature of available land, all dictate that private ownership and land use increasingly must yield to public requirements. The stake of the public in maximum

land utilization is increasingly being recognized in the law in such fields as eminent domain, zoning, etc. *(see, e.g., McMinn v Town of Oyster Bay,* 66 NY2d 544). This is expressly recognized by the Court of Appeals by both the holding and the rationale in *Bruken (supra).*

This turmoil in our concept of property is reflected in the constitutional protection of all sorts of "statutory entitlements" and is very much evident in the fields of landlord and tenant or co-ops and condominiums. The enforcement of a private agreement to restrict the group of persons who may acquire or use residential apartments seems to come in conflict with present or future communal needs. Hence, a strict application of the Rule Against Perpetuities, it seems to me, would encourage the availability of residential space for more people.

There is another public policy factor which strongly argues against upholding this provision in the bylaws. Since *Shelley v Kraemer* (334 US 1) the Supreme Court, as well as the other agencies of government, has refused to support, by law, covenants which foster discrimination. Certainly, what the insiders seek to do by their covenant is to legalize a "gentlemen's agreement", and thus their right to discriminate in perpetuity. This court should not support that endeavor.

It may be asserted that the sundry and assorted "human rights" statutes can be invoked to counter specific sorts of discrimination in housing. But this argument does not convince me that we should give judicial vindication to an institutional device which has as its primary objective the exclusion of all persons deemed "undesirables" by the small control group. This seems to run directly counter to the public policy rationale expressed in *Bruken (supra).*

As part of its discussion in the *Bruken* case, the court stated *(supra,* p 164) that: "Commentators, and this Court as well * * * have urged that the courts might better concede that although preemptive rights offend the basic policy of the rule against remote vesting, the offense is properly offset by their utility in modern legal transactions and that usefulness justifies excepting them from the operation of the rule". The opinion goes on to reason (p 165): "The courts have reached this conclusion in a number of circumstances involving options and preemptive rights * * * The holder's rights have been recognized because enforcement did not violate the underlying purposes of the rule against remote vesting. Quite

the contrary, enforcement of the preemptive right in such cases encouraged the holder to develop the property by insuring his opportunity to benefit from development and to recapture his investment in it. For similar reasons recent decisions have held that, because the management of condominium developments has a valid interest not only in securing the occupancy of the units but also in protecting the ownership of the common areas and the underlying fee, its preemptive rights to repurchase units before sale to third parties should be excepted from the operation of the rule *(see, e.g., Cambridge Co. v East Slope Inv. Corp.,* 700 P2d 537 [Col]; *Anderson v 50 E. 72nd St. Condominium,* 129 Misc 2d 295; *see generally,* Note, *Condominiums and the Right of First Refusal,* 48 St John's L Rev 1146, 1149 *et seq.)."*

The *Bruken* court expressly holds that the rule against remote vesting does not apply to preemptive rights in commercial and government transactions, "that their validity is to be judged by applying the rule against unreasonable restraints" *(supra,* p 168). It also cites as a basis for its holding that "the preemptive right in this case clearly served a beneficial purpose and given its reasonableness in terms of duration and price, it should be enforced" *(supra,* p 168).

The test of whether the Rule Against Perpetuities should be applied, therefore, depends upon whether the right of first refusal is reasonable or in furtherance of desirable public policy. Judged by such a standard, it seems difficult to justify in the situation before us a rejection of the established rule of 400 years which has served to prevent the tying up of the widest control and enjoyment of land. The need to prevent unnecessary restrictions on land was never more pressing than today, when residential property is becoming scarcer and scarcer. A decision as to the social value of a condominium fettered by a right of first refusal, as compared to one without such restriction, or a decision that it is more socially desirable to encourage condominiums as compared with keeping residential apartments more available for rental, are questions which perhaps should be better left to the Legislature.

If the justification for a judicial exception to the rule against remote vesting is that it establishes a good financial base for condominiums, certainly this objective can be attained by a financial check of prospective purchasers or guarantees by them. If the rationale is that condominiums could be sold easier if the prospective purchasers were screened by

the "in" group, it certainly seems to raise a question of social utility insufficient to warrant such judicial activism.

It seems noteworthy that the deviation from the Rule Against Perpetuities in *Bruken (supra)* was to be applied on a case-by-case analysis in the future. If there is an exception made in the case before us, it will validate *every* "right of first refusal".

The precise issue presented to us by this appeal is whether a right of first refusal, unlimited in duration, violates the Rule Against Perpetuities, or any of its associated doctrines, when applied to a residential condominium. Ultimately, the issue may be resolved by the Court of Appeals or the Legislature. Meanwhile, in light of the authorities in New York at the present time and especially on the basis of the public policy considerations expressed herein, the order of Special Term should be reversed, and plaintiffs' motion for a preliminary injunction granted.

FEIN, MILONAS and KASSAL, JJ., concur with ELLERIN, J; ASCH, J. P., dissents in an opinion.

Order, Supreme Court, New York County, entered on or about June 28, 1985, affirmed, without costs and without disbursements.