[605 NYS2d 169]

DAVID E. EMMONS et al., Appellants, v TROUT LAKE CLUB, INC., Respondent.

Third Department, December 16, 1993

**APPEARANCES OF COUNSEL**

*McPhillips, Fitzgerald & Meyer,* Glens Falls *(Joseph R. Brennan* of counsel), for appellants.

*Bartlett, Pontiff, Stewart & Rhodes, P. C.,* Glens Falls *(Christian Colwell* and *Robert S. Stewart* of counsel), for respondent.

**OPINION OF THE COURT**

CREW III, J. P.

Defendant owns and operates a resort located in the Town of Bolton, Warren County. At present, the resort consists of 63 camps or cabins, of which 44 are owned by defendant and 19 are owned by private individuals, and certain other facilities that are available for the guests to use. In 1952 Ethel Metral, the mother and predecessor in title of plaintiffs Louis Metral and Lorraine C. Sullivan, purchased one of these camps from defendant's predecessor in title, Frankrod Company, Inc. At the same time Metral was given, without charge, a separate agreement allowing her and her guests to utilize all of defendant's facilities. This agreement, however, was personal and did not run with the land.

The deed to the subject property reserved to Frankrod a preemptive right (also called a right of first refusal) that enabled Frankrod to repurchase the camp in the event that Metral elected to sell. The preemptive right provided, in relevant part, that: "the seller shall have, and reserves the option, to repurchase the said premises from the purchaser, if and when the said purchaser desires to sell same, at a price of $4500.00, same constituting the consideration for the sale of the premises herein described, plus the appraised value of any improvements made in or upon the said premises by the purchaser in excess of the sum of $4500.00, but which price shall in no event exceed the sum of $7500.00." This option was good for 60 days after notice to Frankrod of Metral's desire to sell the property. The deed further provided that Metral could convey the property to her children, "provided, however, that at the time of any such conveyance, said child or children * * * shall simultaneously execute a similar option to repurchase running in favor of [Frankrod], at a price to be approved by [Frankrod]".[1]

---

1. Similar sales were made to other individuals over the years, and it appears that in each case, the relevant deed contained a preemptive right similar to that set forth in Metral's deed.

Metral and Sullivan inherited the parcel upon their mother's death and thereafter leased the premises to plaintiffs David E. Emmons and Diane H. Emmons for the period January 1, 1989 to September 30, 1989 for $10 per month. The lease also contained an option to purchase the property for $35,000, which was contingent upon approval of such a transfer by a court of competent jurisdiction. The lease further provided that the Emmonses, with Metral and Sullivan's cooperation, would bring a lawsuit to declare invalid the preemptive clause contained in the 1952 deed.

Plaintiffs thereafter commenced this action and, following joinder of issue, moved for summary judgment. Supreme Court denied the motion and, *sua sponte,* granted summary judgment to defendant, finding that the preemptive right did not violate either the Rule against Perpetuities or the rule against unreasonable restraint on alienation. This appeal by plaintiffs followed.

It is well settled in this State that an owner's power to dispose of property is limited by three rules, two of which may be found in the Rule against Perpetuities as set forth in EPTL 9-1.1; the third rule, which invalidates conveyances that impose unreasonable restraints on alienation, is a product of the common law *(see generally, Metropolitan Transp. Auth. v Bruken Realty Corp.,* 67 NY2d 156, 161). The first part of the Rule against Perpetuities, commonly referred to as the suspension of alienation provision, declares that no estate in property shall be valid if the instrument conveying it suspends the power of alienation for a period longer than lives in being at the creation of the estate plus 21 years *(see,* EPTL 9-1.1 [a] [2]). The second portion of the rule, known as the remoteness of vesting provision, provides, in relevant part, that no estate in property shall be valid unless it must vest, if at all, before the expiration of the same period *(see,* EPTL 9-1.1 [b]). Based upon our review of the record before us, we find that the remoteness of vesting provision of the Rule against Perpetuities has been violated *(see,* EPTL 9-1.1 [b]). Having so concluded, we must next consider whether the Rule against Perpetuities should be applied to invalidate the preemptive right at issue here.

Although preemptive rights are ordinarily covered by the rule against remote vesting, the Court of Appeals has acknowledged that there are some situations where application

of EPTL 9-1.1 (b) would not serve the underlying purpose of the statute *(see, Morrison v Piper,* 77 NY2d 165, 170). For example, in *Metropolitan Transp. Auth. v Bruken Realty Corp.* (67 NY2d 156, 168, *supra),* the Court of Appeals held that "the rule against remote vesting does not apply to preemptive rights in commercial and governmental transactions". In so doing, the Court recognized that the important commercial interests served by upholding preemptive rights, which only marginally affect alienability, often outweigh the purpose underlying the Rule against Perpetuities *(see, supra,* at 165-166). In such cases, the Court concluded, "the need to insure free alienability is served more effectively if the validity of the preemptive right is assessed by applying the common-law rule prohibiting unreasonable restraints" *(supra,* at 166).

A similar result was reached by the Court of Appeals in *Wildenstein & Co. v Wallis* (79 NY2d 641), which considered the applicability of the Rule against Perpetuities to a transaction between a commercial art dealer and a private collector involving a preemptive right to purchase works of art. Although noting that the parties and transaction in *Wildenstein* fell somewhere between the transactions considered in *Bruken (supra)* and *Morrison v Piper (supra* [which declined to extend the *Bruken* analysis to preemptive rights in a noncommercial, family transaction involving residential property]),[2] the Court was of the view that the subject transaction was "closer" to the *Bruken* transaction and therefore qualified for "the commercial escape route" *(Wildenstein & Co. v Wallis, supra,* at 651). In concluding that the preemptive rights at issue were not subject to the Rule against Perpetuities, the Court found that the rights "serve[d] significant commercial interests by facilitating broader marketing of world-renowned art treasures while posing, at the most, only a minimal limitation on the alienability of the works" *(supra,* at 651).

---

2. It should be noted that the Court in *Morrison* concluded that the preemptive right at issue did not violate EPTL 9-1.1 (b) *(see, Morrison v Piper,* 77 NY2d 165, 173-174, *supra)* and, hence, the decision in *Morrison* "should not be read to limit or otherwise affect the scope of the *Bruken* holding and exception concerning the Rule against Perpetuities in contemporary *commercial* settings" *(Wildenstein & Co. v Wallis,* 79 NY2d 641, 650, *supra* [emphasis supplied]).

Applying these holdings to the matter before us, we are of the view that the record simply does not contain sufficient facts to permit us to conclude that the preemptive right at issue here qualifies for the commercial exception. It appears that sales to private individuals do not comprise a significant portion of defendant's over-all operation, and there is little development in the record of the asserted commercial interests at stake.[3] In light of this conclusion, we need not consider whether the preemptive right also violates the rule against unreasonable restraint on alienation (see generally, Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 167-168, supra). Were we to do so, however, we would conclude that although the duration of the preemptive right (60 days) does not appear unreasonable, questions of fact remain as to the reasonableness of both the price and the asserted business purpose. In this regard, we note that even if we were to find that the free use of defendant's facilities formed a part of the underlying consideration, there is no indication in the record as to the value of this consideration and, hence, no basis for concluding that the total consideration for the transaction bears a reasonable relationship to market price (see, supra). Accordingly, neither plaintiffs nor defendant are entitled to summary judgment.

---

**3.** We reach a similar conclusion regarding the applicability of the First Department's decision in Anderson v 50 E. 72nd St. Condominium (119 AD2d 73, appeal dismissed 69 NY2d 743). In Anderson, the Court concluded that the remoteness of vesting provision did not apply to preemptive rights created in a deed between a condominium and an individual (see, supra, at 78-79). Although the transaction at issue here arguably is analogous to the situation in Anderson, the record before us is not sufficiently developed to permit a meaningful comparison between the two matters. Moreover, even on this limited record, the preemptive right in Anderson appears distinguishable in at least two key respects. First, the preemptive right in Anderson enabled the owner-seller to receive the fair market value of the property whether the unit was sold to the condominium board or to a third party (see, supra, at 77). Hence, there was no disincentive to improving the property because the owner would receive a fair price and recapture his or her investment. Here, however, the preemptive right limits the repurchase price to $7,500. Additionally, the Court in Anderson found that "[t]here has been no showing or intimation whatsoever by [the] plaintiffs that the right of first refusal * * * has been sought to be used for some improper purpose" (supra, at 79). Plaintiffs here, however, have asserted that the preemptive right serves a discriminatory purpose in that it enables defendant to insure that camps are not deeded to individuals who are "disruptive" or "incompatible" with other resort patrons.

Cardona, White, Mahoney and Casey, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as awarded summary judgment in favor of defendant, and, as so modified, affirmed.