OPINION OF THE COURT
Herman Cahn, J.
This is a declaratory judgment action seeking to void certain portions of a lease. Plaintiff Deer Cross Shopping LLC moves for partial summary judgment and a declaration that certain portions of the subject lease are void as a matter of law (CPLR 3212). For the reasons stated below, the motion is denied.
Deer Cross is the successor in interest to Paul Slayton, the original owner of a certain property located on Deer Park Avenue in Babylon, New York. Slayton entered into a lease on October 24, 1974 with the original tenant, First National Stores, Inc. The leased premises are in the Deer Cross Shopping Center, now owned by plaintiff. Defendant, the Stop & Shop Supermarket Company, is the successor in interest to the original tenant’s interest under the lease.
The Lease:
The original lease term was 25 years, from December 1, 1974 to November 30, 1999. The lease also granted the tenant three successive options to extend the term, of the lease for three separate 10-year terms. The lease provided that the tenant could give notice of its intention to exercise a given option at any time on or before the date which was 11 months prior to the commencement of the extension period for which the option was being exercised.
Failure to give the above notice did not automatically terminate the tenant’s right to exercise the option. Rather, the *403 owner was required to give the tenant notice that the tenant had not timely exercised the option. Upon receipt of such notice, the tenant had an additional 60 days to exercise the option. If the landlord failed to provide such notice on or before a date which was 60 days after the owner’s notice was given, the term of the lease was automatically extended past the expiration date to a date 60 days after the date that such notice was given by the landlord. This was subject to the right of the tenant to terminate the lease on 60 days’ notice to the landlord.
The court notes that the term “Expiration Date” is used in this section. However, the term does not mean the date the lease expires, but only refers to the date when the first 25-year period of occupancy ends.
The lease also contained certain restrictive covenants at issue here. Article 29, § 1 (a) provides that, for the term of the lease, the landlord may not permit anyone other than the tenant to operate a supermarket in the shopping center. The landlord also agreed not to permit any other entity to operate a supermarket in the shopping center. Section 1 (b) carved out certain permissible uses by other entities such as selling fresh baked goods. Section 2 of article 29 contained a provision stating that the landlord or those generally associated with it would not permit any entity to operate a supermarket within a distance of two miles of the perimeter of the shopping center.
Defendants exercised the first extension option in November of 2000.
The Complaint and Motion:
Deer Cross commenced this action in September of 2001, alleging that the lease is invalid because the options to extend violate the prohibition against remote vesting embodied in EPTL 9-1.1 (b), the rule against perpetuities. Deer Cross also seeks to invalidate the restrictive covenants that are recited above. Deer Cross now moves for partial summary judgment declaring that the options are void because they violate the rule against perpetuities.
Discussion:
A party seeking summary judgment must demonstrate that it is entitled to judgment as a matter of law by putting forth evidence to eliminate any material issues of fact. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) The opposing party must then demonstrate the existence of a factual issue requiring a trial of the action in order to defeat the motion. (Zuckerman v City of New York, 49 NY2d 557, 560 [1980].)
*404 The rule against remote vesting is codified in EPTL 9-1.1 (b), which provides, in relevant part, that “No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved.”
The purpose of the rule is to prevent unreasonable restrictions on the alienation of property. (Symphony Space v Pergola Props., 88 NY2d 466 [1996].) Generally, the rule applies to options (to purchase) contained in leases. (See, id. at 476.) However, in Symphony Space, the Court noted that options that originate in one of the lease provisions that are not exercisable after the lease expires, and are incapable of separation from the lease, are valid even though the option holder’s interest might vest beyond the perpetuities period. (Id. at 480.)[1]
In Symphony Space, the Court noted that “[s]uch options . . . encourage the possessory holder to invest in maintaining and developing the property by guaranteeing the option holder the ultimate benefit of any such investment.” (Id.) “Options appurtenant thus further the policy objectives underlying the rule against remote vesting and are not contemplated by EPTL 9-1.1 (b).” (Id., citing Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156 [1986]; Buffalo Seminary v McCarthy, 86 AD2d 435 [4th Dept 1982], affd 58 NY2d 867 [1983].)
Here, Deer Cross argues that the renewal options in the lease violate the rule because they could possibly suspend the period of vesting beyond the time limit set forth in the statute. Deer Cross also argues that the options are not exempted from the rule under the exception set forth in Symphony Space, because they could be exercised after the lease expired.
The lease renewal options are not barred by the rule because they are appurtenant to the lease. The lease specifically provides in article 2, § 2 that if the landlord failed to provide timely notice that the tenant had failed to exercise a given renewal option, then the term of the lease was extended past the “expiration date” to a date which was 60 days after the date that such notice was eventually given by the landlord. Therefore, the lease term was extended until such time as the option was *405 exercised or the lease was terminated and the option therefore had to be exercised within the term of the lease. In other words, the lease remained in full force and effect and did not end during the extended period.
Deer Cross argues that the lease was terminated on the “expiration date” and that an “interim tenancy” came into effect until such time as the option was exercised or the lease was terminated by notice. However, this argument is contrary to the clear and specific language of the lease itself.
The court also notes that this is not a situation where the tenant could delay in exercising the option and thus convert the lease into one of infinite duration which might then result in an unreasonable restriction on the alienation of the property. The lease provides that if the tenant delays in exercising the option, Deer Cross could send a notice to that effect which would compel the tenant to exercise the option within 60 days or risk termination of the lease.
Deer Cross also seeks an order declaring that certain restrictive covenants contained in the lease are void. As noted above, the lease provided that, for its term, the tenant would have the exclusive right to operate a supermarket in the shopping center and the landlord would not permit any other entity to operate a supermarket there except for certain permissible uses. The lease also provided that the landlord could not permit any entity to operate a supermarket within a distance of two miles of the perimeter of the shopping center.
Deer Cross now argues that enforcement of the restrictive covenants would violate the intention of the parties in drafting the covenants, as well as public policy, because the parties intended them to be in effect only as long as Stop & Shop operated a supermarket in the shopping center. “Restrictive covenants will be enforced when the intention of the parties is clear and the limitation is reasonable and not offensive to public policy.” (Forest Hills Gardens Corp. v Velonskis, 309 AD2d 732, 733 [2d Dept 2003].)
Stop & Shop no longer operates a supermarket on the premises. It opened a supermarket less than two miles away from the shopping center.
However, the lease clearly states that Stop & Shop is not required to operate a supermarket in the shopping center. Article 5, § 1 states that the premises had to be initially opened for use as a supermarket, and “following such initial opening *406 Tenant shall not be obligated to conduct, or to remain open for the conduct of, any business . . . and may use the Premises for any lawful purpose . . . .”[2] Also, the lease provides in article 29, § 1 (a) that the restrictive covenants were intended to be in effect throughout the initial and renewal terms.
Based on these provisions, it is clear that the parties intended that the restrictive covenants would remain in effect even if Stop & Shop ceased to operate a supermarket on the premises. Thus, Deer Cross has failed to demonstrate as a matter of law that enforcement of the restrictive covenants would violate the parties’ intentions.
Deer Cross has not demonstrated as a matter of law that enforcement of the restrictive covenants is unreasonable or violates public policy. It argues that Stop & Shop has no legitimate business reason for enforcing the covenants and that the shopping center has suffered economic harm because there is no supermarket on the premises. However, Stop & Shop contends that it has a valid business reason for enforcing the covenants, because it is operating a supermarket less than two miles from the shopping center.
Accordingly, it is ordered that the motion for summary judgment is denied.

. The option at issue in that case was one to purchase the premises. However, it has been noted that this rule also applies to options to renew. (See, Warren St. Assoc, v City Hall Tower Corp., 202 AD2d 200 [1st Dept 1994].) In Warren St., the options to renew the lease were deemed invalid because they could have been exercised after the initial lease term had expired. (See, id.)

. In the event that Stop & Shop failed to operate any type of business on the premises for an extended period, Deer Cross could terminate the lease on 30 days’ notice.