OPINION OF THE COURT
Debra A. James, J.
In this action involving the interpretation of the provisions of a lease to operate a laundry room within a cooperative, plaintiff moves for partial summary judgment on its third and fourth causes of action.
Plaintiff is a cooperative housing corporation that owns the residential apartment building at 585 West 214th Street, New York County (the building). Defendant is a New York partnership engaged in the business of operating laundry facilities on premises it leases from landlords. Pursuant to a lease agreement dated September 12, 1994 (the lease), plaintiff leased to the defendant a laundry room in the building (the premises) for a term of eight years from the date the defendant installed laundry equipment upon the premises. The lease provided that the defendant would be responsible for installing laundry equipment and operating a coin laundry on the premises for the benefit of the residents of the building. The parties agree that the initial term of the lease expired May 31, 2003. Relevant to the current litigation, paragraph 2 of the lease provided in pertinent part that:
“This lease shall continue for like successive terms after the expiration of the original term unless either party shall give notice of its intention not to renew, sent by certified mail, return receipt requested to the other party, no less than [90] days and no more than [120] days prior to the expiration of the original term or any successive term thereafter.”
Plaintiff alleges that, on February it, 2003, it notified defendant of its intention not to renew the lease and that in April 2003 it entered into an agreement with another party to operate the laundry room on the date the plaintiff delivered possession of the laundry room to the other party. The complaint also *248 alleges that, on May 13, 2003, defendant wrote to plaintiff attempting to exercise its right of first refusal in paragraph 12 (c) of the lease, but that defendant never forwarded any agreement documents to plaintiff as defendant promised in that correspondence.
Defendant argues that plaintiff failed to validly terminate the lease and that the lease therefore renewed automatically according to its terms.
In addition, defendant submits evidence that is not refuted that plaintiff sent defendant a copy of a lease dated April 2003 that it had executed with a new laundry operator and sought defendant’s decision to match the offer. Defendant points out that it was only after defendant communicated to plaintiff on May 13, 2003 its choice to meet the offer that plaintiff rejected defendant’s acceptance.
The complaint sets forth four causes of action. The first seeks a declaration that the lease has not been renewed. The second seeks a declaration that the defendant has not exercised the right of first refusal in paragraph 12 (c) of the lease because defendant did not provide plaintiff with a signed agreement and because defendant did not inform the plaintiff of the rent it deemed commercially reasonable. The third cause of action seeks a declaration that the right of first refusal in paragraph 12 (c) of the lease is null and void under the rule against perpetuities because it was exercisable after the initial term of the lease expired. The fourth cause of action seeks a declaration that the right of first refusal in paragraph 12 (c) of the lease is null and void because it constitutes an unreasonable restraint on alienation of property.
Plaintiff on this motion seeks partial summary judgment on its third and fourth causes of action. As a threshold matter, the court rejects defendant’s argument that plaintiffs motion cannot be considered by this court because it seeks an “advisory opinion.” The cases defendant proffers in support of this argument are wholly inapplicable to plaintiff’s claims. (See, e.g., Hammer v American Kennel Club, 304 AD2d 74, 82 [1st Dept 2003] [“plaintiffs request for a declaration as to whether he would be subject to criminal prosecution if he were to dock his dog’s tail seeks what amounts to an impermissible advisory opinion”].) This court has previously held that a declaratory judgment action to determine the validity of a renewal option in a lease “sets forth a present justiciable controversy and a valid cause of action for a declaratory judgment.” (Loudave Estates v *249 Cross Rds. Improvement Co., 26 Misc 2d 522, 524 [Sup Ct, NY County 1960]; see also Matter of Knutson v Tillotson, 270 AD2d 268, 269 [2d Dept 2000] [“(respondent) has demonstrated that it is entitled to a declaration that the lease is valid and that it properly exercised its option to renew thereunder”].) In this case, a declaration of the validity of defendant’s right of first refusal as sought by the plaintiff on this motion is determinative of the parties’ rights in this litigation as one of defendant’s defenses is that it properly exercised this right. Thus, the court’s determination of this issue is not merely “advisory” because it determines the rights of the parties in the present litigation.
Furthermore, defendant’s argument that this motion is moot because plaintiff cannot show that the lease was not renewed also lacks merit in light of the fact that defendant has not opposed this motion with an affidavit of facts from a person with personal knowledge of the transaction (see 812 Broadway Enters, v Stephen Mallory Assoc., 210 AD2d 30, 30 [1st Dept 1994] [“the affirmation of defendant’s attorney in opposition was without evidentiary value and insufficient to raise a triable issue of fact”]).
The merits of plaintiffs motion for summary judgment on its third and fourth causes of action involve a determination of the validity of paragraph 12 (c) of the lease. That section provides that:
“At the expiration or termination of this Lease or any renewal, Lessee shall be provided with, and thereupon, shall have the right of first refusal to meet any bona fide bid or offer to lease the laundry room(s) and/or provide coin-metered laundry equipment services to the Premises on terms which are substantially equivalent to the terms of this Lease except that the Lessor may charge any new rent so long as it is commercially reasonable. Should Lessor not receive any bona fide bid or offer to take effect at the expiration or termination of this Lease or any renewal, then the terms of this Lease shall continue in effect until such time as Lessor has received a bona fide bid or offer and Lessee has been afforded its right of first refusal.”
Plaintiff argues that this clause violates the rule against perpetuities and the rule against unreasonable restraints on alienation.
As analyzed by Judge Simons,
“In New York an owner’s power to dispose of prop *250 erty is limited by three rules. The first two, known as the Rule against Perpetuities, are found in subdivisions (a) and (b) of EPTL 9-1.1. The rule declares that no estate in property shall be valid (1) if the instrument conveying it suspends the power of alienation for a period longer than lives in being at the creation of the estate plus 21 years and (2) unless it must vest, if at all, before expiration of the same period. Although the statutory period is lives in being plus 21 years, in this case the parties to the agreement were corporations and, inasmuch as no measuring life or lives were stated in the instruments, the permissible period is 21 years. The third rule regulating dispositions is established by common law and invalidates conveyances which impose unreasonable restraints on alienation.
“The statutory rule prohibiting remote vesting and the common-law rule against unreasonable restraints serve the same general purpose by limiting the power of an owner to create uncertain future estates. The statutory rule does so indirectly by limiting the time when future interests must vest. The rule against unreasonable restraints on alienation does so directly by forbidding owners to impose conditions on conveyances which block the grantee from freely disposing of the property. While the statutory rule is inflexible, measured solely by the passage of time, the common-law rule is applied by considering the reasonableness of the restraint. Whether a restraint on the disposition of property is unreasonable is a question of fact depending upon its purpose, duration and, where applicable, the designated method for fixing the purchase price. It is generally said that the reason for the common-law rule is that ownership of property cannot exist in one person and the right of alienation in another, but the same general policy concerns underlying the rule against perpetuities also favor a rule against unreasonable restraints.” (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 161-162 [1986] [citations omitted].)
The Court further stated that the purpose of these rules
“is to ensure the productive use and development of property by its current beneficial owners by simplifying ownership, facilitating exchange and freeing *251 property from unknown or embarrassing impediments to alienability . . . When an owner attempts to exert control over the transferability of his property for too long a time, the courts will step in, invalidate the restricting provisions, and permit transfer to take effect uninhibited by the restraint.” (Id. at 161.)
Although the rules are defined in terms of the right to sell property, they also apply to leasehold estates. (See Warren St. Assoc, v City Hall Tower Corp., 202 AD2d 200 [1st Dept 1994]; Deer Cross Shopping LLC v Stop & Shop Supermarket Co., 2 Misc 3d 401, 402 [Sup Ct, NY County 2003].)
In applying these rules to paragraph 12 (c) of the lease on this motion, it is first necessary to determine whether that clause grants defendant an option versus a preemptive right as separate standards are applied to each. The Court of Appeals has held “that the rule against remote vesting does not apply to preemptive rights in commercial and governmental transactions, that their validity is to be judged by applying the rule against unreasonable restraints.” (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 168 [1986]; see also Wildenstein & Co. v Wallis, 79 NY2d 641, 650 [1992] [“In light of the history and purposes underlying the rule and the commercial and precedential context in which the Wildenstein/Wallis agreement arose, we conclude that the rule against remote vesting does not apply to these preemptive and exclusive consignment rights”].) However, the Court has held that all options in real estate are subject to the rule against perpetuities. (Symphony Space v Pergola Props., 88 NY2d 466, 477-478 [1996].)
Plaintiff argues that paragraph 12 (c) of the lease creates an option in favor of the defendant. The court disagrees and holds that paragraph 12 (c) of the lease does not create an option, but instead creates a preemptive right.
“An option grants to the holder the power to compel the owner of property to sell it whether the owner is willing to part with ownership or not. A preemptive right, or right of first refusal, does not give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer or buy the property at some other price set by a previously stipulated method. Once the owner decides to sell the property, the holder of *252 the preemptive right may choose to buy it or not, but the choice exists only after he receives an offer from the owner. If the holder decides not to buy, then the owner may sell to anyone.” (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 163 [1986] [citations omitted].)
Contrary to plaintiffs argument, defendant does not have the right under paragraph 12 (c) of the lease to require the plaintiff to lease the premises to it. Defendant has no rights under that clause until the termination of the initial term or renewal of the lease, and those rights ripen only if and when the plaintiff receives a bona fide bid or offer to lease. If the defendant decided not to match the offer, the plaintiff was free to offer the lease to anyone. Therefore, paragraph 12 (c) of the lease clearly creates a preemptive right, rather than an option, in favor of the defendant.
Having determined that the defendant possesses a preemptive right under paragraph 12 (c) of the lease, the next inquiry is whether that right is subject to the rule against perpetuities. If the lease comes within the “commercial and governmental transactions” exception articulated in Bruken (67 NY2d at 168) and Wildenstein (79 NY2d at 650), then the preemptive right would not be subject to the rule against perpetuities, and would only be subject to the rule against unreasonable restraints on alienation. However, the “commercial” exception is not without its limits. Thus, the Court has stated that there is “no ground for extending the Bruken exception to private, noncommercial transactions between individuals in which there is no governmental or public interest.” (Morrison v Piper, 77 NY2d 165, 171 [1990].) In Wildenstein, the Court of Appeals advised that courts looking to determine whether to apply the exception should look at the challenged transaction to determine whether the application of the rule against perpetuities would invalidate an agreement which promoted the use and development of the property. (Wildenstein, 79 NY2d at 650.)
This case lies somewhere on the continuum between the holdings in Bruken, Wildenstein and Morrison. The lease at issue here is between a cooperative corporation and a commercial partnership and involves the provision of coin-operated laundry services to a building owned by the cooperative corporation. The lease was executed by persons acting in their capacity as officers, not individuals, and concerns a laundry room which is apparently outside of the residential area of the building. These *253 factors weigh in favor of finding that the rule against remote vesting as codified in EPTL 9-1.1 (b) does not apply in this case because the lease comes within the commercial exception set forth in Bruken and Wildenstein.
Furthermore, the First Department has held that, based upon the holding of Bruken,
“because the management of condominium developments has a valid interest not only in securing the occupancy of the units but also in protecting the ownership of the common areas and the underlying fee, its preemptive rights to repurchase units before sale to third parties should be excepted from the operation of the rule.” (Anderson v 50 E. 72nd St Condominium, 119 AD2d 73, 77-78 [1st Dept 1986] [emphasis omitted].)
In Anderson, the Court upheld the application of the commercial exception to the mle against perpetuities where the preemptive rights were lodged in the condominium corporation because the policies underlying the Bruken exception, the encouragement and development of property, were supported by such application. The Court further stated that:
“In light of the comparatively recent emergence and widespread use of new and creative ownership arrangements of property, such as condominiums and cooperatives, that were uncontemplated in the post-feudal agrarian period in which the then progressive Rule Against Perpetuities had its genesis, this modern trend of holding the ‘right of first refusal’ not to be subject to that rule appears to be more consistent with the realities of contemporary commerce and economics than the authorities holding to the contrary.” (Anderson, 119 AD2d at 78.)
Thus, this court holds that the preemptive right embodied in paragraph 12 (c) of the lease here is not subject to the rule against remote vesting as it comes within the “commercial” exception to the rule cited in Bruken (67 NY2d at 168) and Anderson (119 AD2d at 77) and therefore plaintiffs motion for summary judgment on the third cause of action in the complaint must be denied.
Now, the court must finally determine whether, as asserted in plaintiffs fourth cause of action, lease paragraph 12 (c) — the right of first refusal — violates the common-law prohibition against unreasonable restraints on alienation. As stated by the First Department:
*254 “In Bruken, the Court of Appeals delineated the test to be used in determining the validity of a preemptive right under the common-law prohibiting unreasonable restraints on alienation. It is the reasonableness of the restraint, judged by its duration, price and purpose, that is determinative. Significantly, the duration of the restraint is not measured by the life of the preemptive right, but rather by the period during which the right can be exercised once the owner decides to sell.” (Anderson, 119 AD2d at 78-79 [citation omitted], citing Bruken, 67 NY2d at 167.)
In applying this test to contingent interests in real property, the court must take into account that “[t]he lease, like any other contract, should be construed in such a manner as to effectuate the intent of the parties and as to produce a reasonable result.” (Omath Holding Co. v City of New York, 149 AD2d 179, 184-185 [1st Dept 1989]; see EPTL 9-1.3 [“(a) Unless a contrary intention appears, the rules of construction provided in this section govern with respect to any matter affecting the rule against perpetuities, (b) It shall be presumed that the creator intended the estate to be valid”].)
“For example, where a deed contains contradictory phrases, one of which is valid under the Rule, or where one of two possible interpretations of a term in an agreement would comply with the Rule, the court will adopt the construction validating the disposition. By contrast, an option containing no limitation in duration demonstrates the parties’ intent that it last indefinitely, and EPTL 9-1.3 does not permit an extensive rewriting of the option agreement ... so as to make it conform to the permissible period.” (Symphony Space v Pergola Props., 88 NY2d 466, 482 [1996] [internal quotation marks and citations omitted].)
In this case, plaintiff argues that paragraph 12 (c) of the lease violates the rule against unreasonable restraints on alienation because it is not appurtenant to the lease as it can be exercised at any time after the term of the lease is concluded. (See Symphony Space, 88 NY2d at 480.) The first sentence of paragraph 12 (c) states that the defendant’s preemptive right to renew its lease accrues at the termination of the lease or renewal thereof upon the receipt by the plaintiff of a bona fide offer to lease the laundry room or to operate a laundry room *255 anywhere else in the building. By its terms this right violates the rule because there is no limitation on the period during which the right can be exercised once the defendant is presented with a bona fide offer. The defendant in its opposition papers does not suggest there is any effective limitation upon the time in which it may exercise the option. (Contra Bruken, 67 NY2d at 167 [“the reasonableness of (the) preemptive right must be determined not by considering the 99-year term, but by considering the 90-day period during which the right could be exercised after the (plaintiff) decided to sell”].)
Unlike the reference to rezoning in Omath Holding Co. v City of New York (149 AD2d 179, 181 [1st Dept 1989]), lease ¶ 12 (c) contains no language from which a limitation on the time in which the defendant may exercise the preemptive right can be implied. To the contrary, the language of the second sentence of paragraph 12 (c) would seem to suggest the opposite. That clause states that:
“[S]hould Lessor not receive any bona fide bid or offer to take effect at the expiration or termination of this Lease or any renewal, then the terms of this Lease shall continue in effect until such time as Lessor has received a bona fide bid or offer and Lessee has been afforded its right of first refusal.”
Phrased another way, this second sentence provides that should no offer be received at the termination or expiration of the lease, the lease does not renew, but defendant continues in possession on the same terms as the now-terminated lease, on a contingent basis, until such time as plaintiff receives a bona fide offer and the defendant decides whether to match the offer. Moreover, even here, where defendant received such an offer, defendant had an indefinite time thereafter in which to exercise its right of first refusal. Thus, no provision of the lease implies any limitation upon the time the defendant has to exercise its preemptive right after receiving a bona fide offer and defendant does not argue in favor of or suggest any such limitation.
Nor does the defendant’s prompt response on May 13, 2003 to plaintiffs notice of the third-party offer rescue lease paragraph 12 (c). The courts have uniformly rejected the adoption of a “wait and see” approach to assessing whether a provision creates an unreasonable restraint on alienation (Symphony Space at 483-484, supra-, see Bruken at 163, supra [“The validity of the provision must be judged by the circumstances existing at the time of the grant”]). Defendant’s further argument that the preemptive *256 right was limited in duration because it expired with the lease as a matter of law is unsupported by the case law.[1] Such interpretation also contradicts the holdover status the provision confers upon defendant upon expiration or termination of the lease, in the scenario where plaintiff fails to provide a bid or offer.
As defendant itself states in its papers, the intent of this provision set forth in the lease, printed on defendant’s letterhead, is to insure that defendant will have the ability to match any bona fide offer by anyone to operate a laundry room in the building. Defendant asserts, under its interpretation of the lease, that the only way in which the plaintiff could break free of the defendant’s grasp is if at the time the lease terminated the plaintiff decided that it did not want to use the premises as a laundry room for its residents. Assuming arguendo that defendant’s interpretation is correct, such preemptive right violates the rule against unreasonable restraints on alienation because of its failure to limit the time in which the ripened grant may be exercised.
Furthermore, the court finds, based on the express terms of the lease and the defendant’s arguments, that the purpose of the preemptive right also violates the rule against unreasonable restraints on alienation. The express purpose of the lease clause was to ensure that the defendant remained in possession of the premises as long as defendant matched any bona fide offer. While the requirement that defendant match any bona fide offer rendered the preemptive right reasonable as to price (see Bruken, 67 NY2d at 167-168), no beneficial purpose has been demonstrated. In this lease transaction, as opposed to a sale, the mere receipt by plaintiff from defendant of equivalent consideration as would be available from a third party does not render the transaction beneficial. The proper exercise of the *257 preemptive right by the defendant compels the plaintiff to lease premises to a lessee whose leasehold it has terminated. Therefore, the preemptive right serves no beneficial purpose.
Defendant’s other arguments seeking to sustain the validity of the preemptive right are without merit. Defendant’s reliance upon various unreported decisions is unavailing as in each of the cases cited by defendant,[2] the court did not rule upon the validity of defendant’s preemptive right, but merely granted the defendant a preliminary injunction to maintain the status quo and such determinations are not on the merits. (See Ratner v Fountains Clove Rd. Apts., 118 AD2d 843, 843 [2d Dept 1986] [“It is well settled that the granting or denial of a motion for a preliminary injunction does not constitute the law of the case or an adjudication on the merits of the claim for a permanent injunction and, therefore, the issues must be tried as if no application for a preliminary injunction had been made”].)
The court holds that the duration and the purpose of defendant’s preemptive right in paragraph 12 (c) violate the rule against unreasonable restraints on alienation. The court shall therefore grant plaintiffs motion for summary judgment on the fourth cause of action in the complaint and declare that paragraph 12 (c) in the lease is null and void.
Accordingly, it is ordered and adjudged that plaintiffs motion for partial summary judgment against defendant on the third cause of action in the complaint is denied; and it is further ordered and adjudged that plaintiff’s motion for partial summary judgment against defendant on the fourth cause of action in the complaint is granted; and it is further ordered and adjudged that it is hereby declared that paragraph 12 (c) in the lease between the parties dated September 12, 1994 is null and void and of no effect; and it is further ordered that this action shall continue as to the remaining causes of action.

. Defendant cites to the unreported decision in Hercules Corp. v Beach View Apt. Corp. (6 Misc 3d 1009[A], 2001 NY Slip Op 50149[U] [Sup Ct, Nassau County 2001, Lally, J., Index No. 19499/2000]) in support of its position. In that case, however, the court held (at *4) that “the characterization of the agreement as a license or lease is irrelevant here because plaintiff does not deny that it failed to provide the statutory notice requirement set forth in General Obligations Law § 5-903 (2)” and therefore the court’s holding did not rely upon the grounds of whether or not the preemptive right was timely exercised. However, defendant’s citation of Hercules has apparently inspired the plaintiff in its reply papers to now assert that the lease renewal was invalid under the notice requirement of General Obligations Law § 5-903 (2). The court declines to consider these factual allegations raised for the first time in plaintiffs reply.

. Coinmach Indus. Co. v Hudson View Gardens, Inc., Sup Ct, NY County, Jan. 5, 1995, Cahn, J., Index No. 401168/1994; Coinmach Indus. Co. v One Union Sq. E. Condo Assoc., Sup Ct, NY County, Apr. 25, 1994, Cahn, J., Index No. 121934/1993; Coinmach Indus. Co. v North Ridge Section II, Inc., Sup Ct, Nassau County, Jan. 6, 1992, Index No. 30393/1991.