OPINION OF THE COURT
Simons, J.
In 1966 the State of New York, acting through the Metropolitan Commuter Transportation Authority (now plaintiff Metropolitan Transportation Authority [MTA]) bought all the capital stock of plaintiff Long Island Railroad from the Pennsylvania Railroad for $65 million. Included among the assets acquired were 65 acres of real property in Queens which had been used by the Long Island Railroad as a freight yard. As *160 part of the consideration, to reduce the purchase price, the State conveyed air rights above this property to Delbay Corporation, a subsidiary of Pennsylvania, together with an easement permitting it to erect columns, piers or foundations and to install utility services necessary to support and service improvements within the air rights. It also executed an "option agreement” granting Delbay the right to purchase 12 lots in the freight yard at market value if MTA subsequently determined that the property was "no longer necessary for [its] transportation operations”. The option expired if Delbay, or its successors or assigns, did not exercise it within 99 years. The issue presented on this appeal is whether that option agreement violated the prohibition against remote vesting stated in New York’s Rule against Perpetuities (see, EPTL 9-1.1 M).
On April 16, 1982 MTA notified Delbay that it no longer required six of the lots and that Delbay could acquire them. Delbay thereafter assigned its right to two of the lots to a real estate developer, defendant Bruken Realty Corporation, and Bruken, by letter dated July 13, 1982, notified MTA of its election to purchase them. Although the original agreement provided for arbitration of the market value, the parties agreed to attempt to negotiate the price after obtaining separate appraisals. The air rights conveyed to Delbay had since been acquired by the City of New York in a tax foreclosure proceeding, however, and, with the air rights and the ground rights in separate ownership, the parties were unable to reach agreement. Accordingly, they selected arbitrators and submitted the determination of market value to them. Before hearings could start, plaintiffs instituted this action requesting that the court enjoin the arbitration proceeding and declare that the conveyance to Delbay of the right to acquire the freight yard lots was void. Plaintiffs subsequently moved for summary judgment and Supreme Court denied the motion on alternative legal grounds (125 Misc 2d 497). The Appellate Division affirmed, without opinion, and the matter is before us on a certified question by its leave. We now affirm.
I
The rules limiting the right of owners to indefinitely control title to property developed because of the natural antagonism between society’s interest in promoting the free and ready transfer of property and the desire of property owners to *161 control the future disposition of their holdings. Originally intended to restrict family dispositions, usually dispositions by royalty or the landed gentry, the rules have antecedents as old as any known to the common law. Their purpose is to ensure the productive use and development of property by its current beneficial owners by simplifying ownership, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability (see, De Peyster v Michael, 6 NY 467, 494). The rules are legal prohibitions, based on the public policy of the State. They may not be waived, as could rules enacted for the benefit of the parties alone. When an owner attempts to exert control over the transferability of his property for too long a time, the courts will step in, invalidate the restricting provisions, and permit transfer to take effect uninhibited by the restraint.
In New York an owner’s power to dispose of property is limited by three rules. The first two, known as the Rule against Perpetuities, are found in subdivisions (a) and (b) of EPTL 9-1.1. The rule declares that no estate in property shall be valid (1) if the instrument conveying it suspends the power of alienation for a period longer than lives in being at the creation of the estate plus 21 years and (2) unless it must vest, if at all, before expiration of the same period. Although the statutory period is lives in being plus 21 years, in this case the* parties to the agreement were corporations and, inasmuch as no measuring life or lives were stated in the instruments, the permissible period is 21 years (see, Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-1.1, 1986 Cum Ann Pocket Part, p 213; see also, Matter of Griffin, 45 App Div 102, 107, revd on other grounds 167 NY 71). The third rule regulating dispositions is established by common law and invalidates conveyances which impose unreasonable restraints on alienation.
The statutory rule prohibiting remote vesting and the common-law rule against unreasonable restraints serve the same general purpose by limiting the power of an owner to create uncertain future estates. The statutory rule does so indirectly by limiting the time when future interests must vest. The rule against unreasonable restraints on alienation does so directly by forbidding owners to impose conditions on conveyances which block the grantee from freely disposing of the property. While the statutory rule is inflexible, measured solely by the passage of time, the common-law rule is applied by considering the reasonableness of the restraint. Whether a restraint *162 on the disposition of property is unreasonable is a question of fact depending upon its purpose, duration and, where applicable, the designated method for fixing the purchase price (see, Allen v Biltmore Tissue Corp., 2 NY2d 534; see also, Ann., 40 ALR3d 920, 926). It is generally said that the reason for the common-law rule is that ownership of property cannot exist in one person and the right of alienation in another (De Peyster v Michael, 6 NY 467, 492-494, supra; Witt v Disque, 79 AD2d 419, 425), but the same general policy concerns underlying the rule against perpetuities also favor a rule against unreasonable restraints.
II
Plaintiff contends that the State’s agreement gave Delbay an option to buy the freight yard lots, that options are subject to the rule against remote vesting under the holding of Buffalo Seminary v McCarthy (86 AD2d 435, affd on opn below 58 NY2d 867) and that since Delbay’s option might not be exercised within the statutory period, it is void. Whether the provision is void or not requires a determination first of the nature of the interest created — whether it is an option or, as Bruken claims, a preemptive right — and, second, if it is a preemptive right, whether the rule applies to it.
Preliminarily, it is clear that before enactment of EPTL 9-1.1 in 1965 Bruken’s right to acquire the lots, whatever its nature, would not be invalid under the New York laws governing perpetuities. We so held in Matter of City of New York (Upper N Y. Bay) (246 NY 1, 29-30; see also, Buffalo Seminary v McCarthy, supra, pp 440-443; 5A Powell, Real Property ¶ 792 [6], at 704-705). In 1965, however, the New York Legislature revised the statute, intending by the amendment to incorporate into New York law the American common-law rules governing perpetuities (see, 1965 NY Legis Ann, at 206-207; Buffalo Seminary v McCarthy, supra, p 442). Although American jurisdictions were divided on the question (see, 5A Powell, Real Property ¶ 792 [6], at 704-705; Pre-emptive Rights to Realty as Violation of Rule against Perpetuities or Rule Concerning Restraints on Alienation, Ann., 40 ALR3d 920), we affirmed the Appellate Division’s decision in Buffalo Seminary (supra) on the opinion of Justice Hancock, as he then was, and held that an unlimited option in gross, i.e., an option to buy another’s property not joined with any other interest in the property, violated the rule against remote vesting and was *163 therefore void. Preemptive rights differ significantly from options, however, and we have not yet decided whether they are subject to that rule.
A
The right acquired by Delbay, though called an option by the parties, was a preemptive right to buy the freight yard property. An option grants to the holder the power to compel the owner of property to sell it whether the owner is willing to part with ownership or not. A preemptive right, or right of first refusal, does not give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer or buy the property at some other price set by a previously stipulated method (see, Garcia v Callender, 125 NY 307, 311; 5A Powell, Real Property ¶ 771 [1], at 72-68). Once the owner decides to sell the property, the holder of the preemptive right may choose to buy it or not, but the choice exists only after he receives an offer from the owner. If the holder decides not to buy, then the owner may sell to anyone (see generally, 6 American Law of Property § 26.64, at 507 [Casner ed 1952]; 1A Corbin, Contracts § 261; Ann., 40 ALR3d 920 924).
The instrument invalidated in Buffalo Seminary (supra) was an option. It granted the holder an unlimited right to buy the owner’s land at any time. It was void for remoteness because it created an interest which could vest after passage of the statutory period if the holder or his successors or assigns chose to delay exercising the option that long. Under the terms of this instrument, however, the decision to sell remained with MTA and Delbay was granted the right to purchase only if MTA first decided to sell because it had no further need for the property. MTA seeks to bring the case within the rule of Buffalo Seminary (supra) by contending that Delbay could compel a sale if MTA ceased to use the property for transportation purposes. Whether the property was necessary to MTA in fulfilling its statutory powers was obviously a discretionary decision to be made by it, however, and not one Delbay could compel. The validity of the provision must be judged by the circumstances existing at the time of the grant but, in hindsight, it is manifest that MTA was not forced to sell but, rather, that it activated Delbay’s rights in April 1982 *164 by notifying Delbay that the property was available for purchase.

B

We turn then to whether the rule against remote vesting applies to preemptive rights.
The New York courts which have considered the question have reached different results (see, e.g., Witt v Disque, 79 AD2d 419, supra; Anderson v 50 E. 72nd St. Condominium, 129 Misc 2d 295; Izzo v Brooks, 106 Misc 2d 743; Kowalsky v Familia, 71 Misc 2d 287 [all holding the preemptive right valid]; cf. Smith v Smith, 116 AD2d 810; Schippers v Baron, Sup Ct, Kings County, Feb. 15, 1983, Morton, J. [all holding the preemptive right invalid]) as have courts from other jurisdictions (see, e.g., Robroy Land Co. v Prather, 95 Wn 2d 66, 622 P2d 367; Lawson v Redmoor Corp., 37 Wn App 351, 679 P2d 972; Shiver v Benton, 251 Ga 284, 304 SE2d 903; Hartnett v Jones, 629 P2d 1357 [Wyo]; Weber v Texas Co., 83 F2d 807, cert denied 299 US 561; see also, Windiate v Leland, 246 Mich 659, 225 NW 620 [dicta]; Terrell v Messenger, 428 So 2d 1241 [La App] [all holding the preemptive right valid]; Lewis Oyster Co. v West, 93 Conn 518, 107 A 138; Atchison v City of Englewood, 170 Col 295, 463 P2d 297 [but see, Oliner v City of Engelwood, 42 Col App 106, 593 P2d 977]; Melcher v Camp, 435 P2d 107 [Okla]; Anderson v Riegel, 229 Wis 200, 281 NW 915 [all holding the right invalid]).
The courts which have declined to apply the rule have tried to distinguish preemptive rights from other interests in property by determining either (1) that the holder of a preemptive right has an interest which vests immediately, not remotely (see, e.g., Izzo v Brooks, supra) or (2) that the holder acquires only a contract right exercisable at some future date, not an interest in property (see, e.g., Robroy Land Co. v Prather, supra). Commentators, and this court as well (see, Buffalo Seminary v McCarthy, 86 AD2d 435, 442, n 6, affd 58 NY2d 867, supra), have criticized both analyses as contrary to established principles of law and have urged that the courts might better concede that although preemptive rights offend the basic policy of the rule against remote vesting, the offense is properly offset by their utility in modern legal transactions and that usefulness justifies excepting them from the operation of the rule (see, 5A Powell, op. cit. ¶ 771 [1], at 72-68, 72-70; Simes and Smith, Future Interests § 1154, at 64 [2d ed *165 1956]; Leach, Perpetuities: New Absurdity, Judicial and Statutory Correctives, 73 Harv L Rev 1318, 1320).
The courts have reached this conclusion in a number of circumstances involving options and preemptive rights, e.g., for options appurtenant to leases (see, Buffalo Seminary v McCarthy, 86 AD2d 435, 441, n 5, supra), or to mineral rights (Weber v Texas Co., 83 F2d 807, supra), or to franchise rights (Todd v Citizens’ Gas Co., 46 F2d 855, cert denied 283 US 852 [dicta]), or for options to expand an easement (Caruthers v Peoples Natural Gas Co., 155 Pa Super Ct 332, 38 A2d 713) or to acquire an interest in a party wall if the optionee decided to build adjacent to the optionor’s land (Beloit Bldg. Co. v Quinn, 145 Kan 507, 66 P2d 549). The holder’s rights have been recognized because enforcement did not violate the underlying purposes of the rule against remote vesting. Quite the contrary, enforcement of the preemptive right in such cases encouraged the holder to develop the property by insuring his opportunity to benefit from development and to recapture his investment in it. For similar reasons recent decisions have held that, because the management of condominium developments has a valid interest not only in securing the occupancy of the units but also in protecting the ownership of the common areas and the underlying fee, its preemptive rights to repurchase units before sale to third parties should be excepted from the operation of the rule (see, e.g., Cambridge Co. v East Slope Inv. Corp., 700 P2d 537 [Col]; Anderson v 50 E. 72nd St. Condominium, 129 Misc 2d 295, supra; see generally, Note, Condominiums and the Right of First Refusal, 48 St John’s L Rev 1146, 1149 et seq.). Finally, Bruken claims that there is a "public interest” exception to the rule prohibiting remote vesting and it urges us to adopt that exception and apply it here (see, Southeastern Pa. Transp. Auth. v Philadelphia Transp. Co., 426 Pa 377, 233 A2d 15). In the Southeastern Pa. Transp. Auth. case, the court enforced an otherwise invalid option to permit a municipal agency to acquire facilities to insure continued mass transportation services in the Philadelphia area. The holding is said to rest upon the rationale that government is similar to a charity and thus not subject to the rule against remote vesting (see, Note, Southeastern Pennsylvania Transportation Authority v Philadelphia Transportation Co., The Rule Against Perpetuities — Does the Rule Apply to an Option to Purchase Held by a Municipality, 72 Dick L Rev 651, 660, 661).
Implicit in these decisions is a recognition that although *166 preemptive rights unlimited in duration violate the rule against remote vesting they do so only marginally and that application of the rule, because of its inflexibility, may operate to invalidate legitimate transactions. This is so particularly in commercial and governmental activities because neither "lives in being” nor "twenty one years” are periods which are relevant to business or governmental affairs. In such cases the need to insure free alienability is served more effectively if the validity of the preemptive right is assessed by applying the common-law rule prohibiting unreasonable restraints (see, Leach, Perpetuities in a Nutshell, 51 Harv L Rev 638, 660-661; Leach, op. cit., 73 Harv L Rev, at 1320; Berg, Long-Term Options and the Rule Against Perpetuities, 37 Cal L Rev 1, 21-22; Simes and Smith, op. cit. § 1154, at 64).
This case illustrates the point. Application of the rule against remote vesting here would defeat the policies underlying the rule because it would invalidate an agreement which promoted the use and development of the property while, at the same time, imposing only a minor impediment to free transferability. Through its agreement with Pennsylvania Railroad, the State advanced its objective, to obtain a substantial reduction in the price it paid to acquire the assets of the Long Island Railroad property, assets the State needed to maintain commuter service to the approximately 260,000 passengers of the New York City and Long Island area who used the transportation facilities of the Long Island Railroad daily. It had no long-term interest in the freight yard property or in the air rights conveyed to Pennsylvania Railroad; it was confronted with the possibility that the Long Island Railroad, previously bankrupt, subsequently reorganized, and in serious financial condition in 1966, might shortly be dissolved. The State’s interest was preservation of the passenger transportation facility and it intended to keep the freight yard property only long enough to evaluate the need for the lots in conjunction with operating the commuter service. This agreement gave MTA the opportunity to do so. In the meantime the State conveyed the air rights to Pennsylvania, granting it the necessary easements to develop those rights, and a preemptive right for the future acquisition of the ground rights, so that the interests in air and ground rights could eventually be reunited. The transfer permitted the parties to put both properties, the railroad and the freight yard, to their maximum productive use, a benefit which far outweighed any public interest served by automatic invalidation of the *167 preemptive right to the lots solely because of remote vesting of Delbay’s interest. Moreover, because the parties were a State authority and a national transportation corporation engaged in a widely publicized transaction — not private citizens whose interest might never be discovered with the passage of time — it did so without unknown limitations on the title which could inhibit future property transfers. Manifestly whatever obstacles there are to the disposition of property by restrictions such as this are best regulated by the rule against unreasonable restraints on alienation so that the utility of the restriction may be considered, rather than by the inflexible rule against remote vesting.
Ill
Under the rule prohibiting unreasonable restraints on alienation, the validity of the preemptive right rests on its reasonableness, judged by its duration, price and purpose. The duration of the restraint is not measured by the life of the preemptive right. The rule does not condemn restrictions on transfer, i.e., provisions which postpone sale during the option period: it condemns only the "effective prohibition against transferability itself’ (Allen v Biltmore Tissue Corp., 2 NY2d 534, 542, supra [emphasis in original]; and see, Buffalo Seminary v McCarthy, 86 AD2d 435, 448, supra; Tramontano v Catalano, 23 AD2d 894). Indeed, dusty New York authority holds that preemptive rights may be perpetual (see, De Peyster v Michael, 6 NY 467, supra; Jackson ex dem. Lewis v Schutz, 18 Johns 174 [Spencer, Ch. J., concurring]; Overbagh v Patrie, 8 Barb 28, affd 6 NY 510; see also, Schnebly, Restraints Upon the Alienation of Legal Interests: III, 44 Yale LJ 1380, 1392-1394). Thus, the reasonableness of Delbay’s preemptive right must be determined not by considering the 99-year term, but by considering the 90-day period during which the right could be exercised after the MTA decided to sell.
Reasonableness also depends on price, for the method by which the price is set can be critical in determining whether a preemptive right unlawfully restrains transfers. When the holder has a right to purchase at a fixed price, or at a price less than that offered in the market, it is likely to involve a sacrifice by the owner if he wishes to transfer the property, thus becoming a far more serious interference with alienability (see, Simes and Smith, op. cit. § 1154, at 62-63; and see, e.g., Kowalsky v Familia, 71 Misc 2d 287, supra). A preemptive *168 right, however, usually will not be unlawful when conditioned on payment of market value or a sum equal to a third-party offer (see, Restatement of Property § 413 [1944]; and see generally, Ann., 40 ALR3d 920 § 4). Market value, in some instances, may be less than sale price, but a market value fixed by arbitrators compelled to consider the price a willing seller would accept from a willing buyer at the time of sale can hardly be unreasonable, as a matter of law, notwithstanding the separate ownership of air and ground rights.
Finally, as we have stated, the preemptive right in this case clearly served a beneficial purpose and given its reasonableness in terms of duration and price, it should be enforced.
In sum, we hold that the rule against remote vesting does not apply to preemptive rights in commercial and governmental transactions, that their validity is to be judged by applying the rule against unreasonable restraints and that the preemptive right granted Delbay by the State was under all the circumstances a reasonable restriction on the alienability of the freight yard lots.
Accordingly, the order of the Appellate Division should be affirmed. Question certified answered in the affirmative.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, with costs. Question certified answered in the affirmative.