CHARLENE HELTON DRAYSON, Plaintiff-Appellant, v. GEORGE W. WOLFF, Defendant-Appellee.

First District (1st Division)   No. 1—94—2773

Opinion filed February 5, 1996.

Cohon, Raizes & Regal, of Chicago (Maurice P. Raizes and Reuben A. Bernick, of counsel), for appellant.

George W. Wolff, of San Francisco, California, appellee *pro se.*

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Charlene Drayson, filed an action in the circuit court seeking a declaratory judgment that certain conditions and a right to repurchase contained in the deed from defendant, George Wolff, to plaintiff's predecessor in interest, are illegal restraints on alienation. Plaintiff also requested a judgment that she is entitled to a permanent, "transferrable" easement across the remaining property of defendant. Upon being served, defendant removed the action to Federal court on the basis of diversity of citizenship. The district court remanded the case to the circuit court because it found that it did not have jurisdiction due to the lack of a case or controversy between the parties.

While the case was pending in Federal court, the parties filed motions for summary judgment. After the case was remanded to the circuit court, plaintiff requested a hearing on the summary judgment motions filed in Federal court. After a hearing, the circuit court granted summary judgment in favor of defendant, finding the terms of the deed to be reasonable restraints on alienation. Plaintiff now appeals the circuit court order.

BACKGROUND

Since about 1953, defendant's family owned 30 acres of real property located in Hanover Township, Cook County, Illinois. This property was used as the family residence until October 1980, when defendant severed and sold approximately 4.577 acres of the property. This parcel, on which the home stands, was conveyed to La Salle National Bank as trustee for Carl LoDico. In order to preserve the character of this home and land, defendant conveyed the land subject to conditions subsequent and retained a right to repurchase. He did this with the intention of rejoining this property with the remainder of the original 30 acres at some point in the future.

The deed at issue grants the property subject to the conditions and limitations set forth in "Exhibit B," which is attached to the deed. Exhibit B contains a section titled "Deed Conditions," which is included in the appendix of this opinion, but will be briefly summarized here. This section restricts the use of the property to only single-family residential purposes for a period of 39 years[1]. Only one dwelling house of at least 3,000 square feet is permitted on the property and the existing home is to be maintained. The deed is also subject to the condition that all real estate taxes be paid in a timely fashion. The instrument specifically states that the conditions are to be construed as express conditions subsequent as between the parties, "their heirs, successors and assignees." Finally, the instrument gives the grantor and his successors and assignees the right to retake the property if a grantee fails to comply with any of the conditions and does not remedy a breach after the grantor has given notice.

Defendant still owns the remaining 24 acres, which are contiguous to plaintiff's property in three directions. The boundary line between these properties is exceedingly irregular. To allow defendant an opportunity to repurchase the home some day in the future, exhibit B of the original deed also reserved in defendant a right to repurchase if the property was ever sold or assigned. The right to repurchase is also included in the appendix, but the terms can be summarized as follows.

This section provides that for a period of 39 years, the property cannot be sold, assigned, or otherwise transferred without first providing the grantor with the opportunity to purchase the property. Written notice of the grantee's intent to transfer must be given to the grantor not less than 60 days prior to the contemplated transfer. The

---

[1]Section 4 of the Rights of Entry or Re-entry Act provides that rights of reentry for breach of conditions subsequent shall not be valid for a period longer than 40 years. 765 ILCS 330/4 (West 1992).

grantor has 30 days from the date he receives notice of an intent to transfer to exercise the right to repurchase. The sale price is to be set as the lesser of the price set forth in a sales contract with a third party or the fair market value as determined by three appraisers.

After the original sale to LoDico, the property was sold in 1985 to Mr. and Mrs. Perez, with an explicit waiver by defendant of his right to repurchase for that sale. Plaintiff and her late husband acquired title to the property in July 1991. The deed at issue here is recorded in plaintiff's chain of title.

On August 6, 1993, plaintiff commenced this action seeking a declaration that the deed conditions and the right to repurchase together constitute an unreasonable and invalid restraint on alienation. Plaintiff also sought a declaration that the right to repurchase was not binding upon her as a remote grantee, and asked for a permanent, unlimited, and "transferable" easement over defendant's property.

Defendant removed the case to Federal court and plaintiff filed a motion for partial summary judgment. Defendant made a cross-motion for partial summary judgment on the merits, and also sought dismissal of the complaint on the grounds that there was no actual case or controversy, it was not ripe and plaintiff lacked standing. The Federal district court found it did not have jurisdiction under article III, section 2, of the United States Constitution, due to the lack of an actual case or controversy. U.S. Const., art. III, § 2.

The Federal court initially dismissed the case, but after reconsideration it remanded the case to the circuit court, following *Smith v. Wisconsin Department of Agriculture, Trade & Consumer Protection* (7th Cir. 1994), 23 F.3d 1134. In *Smith,* the Seventh Circuit held that when a district court finds it lacks jurisdiction, due to the absence of a case or controversy, in a case that has been removed to Federal court, it must remand the case back to the State court from which it originally came. *Smith,* 23 F.3d at 1142.

After the case was remanded, plaintiff requested that the circuit court hear the summary judgment motions filed in Federal court. Following the hearing, the circuit court granted partial summary judgment in favor of defendant. The court made no determination on the easement issue. This appeal followed.

## DISCUSSION

### I. CASE OR CONTROVERSY

■ Initially, this court must determine whether there was an actual controversy before the circuit court in this declaratory judg-

ment action. "Declaratory judgments are designed to settle and fix the rights of the parties before there has been an irrevocable change in their positions in disregard of their respective claims of right, and the procedure should be used to afford security and relief against uncertainty with a view to avoiding litigation, not toward aiding it." (*Lihosit v. State Farm Mutual Automobile Insurance Co.* (1993), 264 Ill. App. 3d 576, 580, 636 N.E.2d 625, 628.) The decision to grant or deny a request for declaratory relief will not be overturned absent an abuse of discretion. *Lihosit*, 264 Ill. App. 3d at 580, 636 N.E.2d at 628.

Although the declaratory judgment act (Act) should be applied liberally (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 452, 389 N.E.2d 529, 532), the Act requires that there be an "actual controversy" and that the party seeking relief have a tangible, legal interest in that controversy. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76, 362 N.E.2d 298, 300-01; 735 ILCS 5/2—701 (West 1992).) Where a matter is contingent or uncertain, a court will not declare the rights of the parties to that matter. (*Continental Illinois National Bank & Trust Co. v. Bailey* (1982), 104 Ill. App. 3d 1131, 1139, 433 N.E.2d 1098, 1103-04.) However, "an actual controversy may be found 'where the mere existence of a claim, assertion or challenge to the plaintiff's legal interests portends the ripening seeds of litigation.' " *First of America Bank, Rockford, N.A. v. Netsch* (1995), 166 Ill. 2d 165, 174, 651 N.E.2d 1105, 1109, quoting *Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 214, 475 N.E.2d 223, 227.

In *Underground Contractors*, the supreme court explained "actual controversy" in the following way:

" 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300.

■ The circuit court did not abuse its discretion in granting a declaratory judgment. An actual controversy existed between the parties as to whether the deed provisions at issue are valid. While it is true that plaintiff has not failed to comply with the conditions or

right to repurchase, the mere existence of these deed provisions provides the court with a concrete basis on which to declare the parties' rights. Plaintiff's allegations that these provisions are illegal clouds on her title create the controversy here. There is nothing hypothetical or speculative about plaintiff's or defendant's arguments; they pertain only to the deed, which is at no risk of changing and is not abstract.

## II. DEED PROVISIONS

Plaintiff argues that the deed conditions and the right to repurchase, taken together, are void because they unreasonably restrain the alienation of the property. Apparently, plaintiff admits that either the deed conditions or the right to repurchase, standing alone, would be valid. However, we find that the fact that a single deed contains both of these provisions does not make it any greater a restraint on alienation because the conditions in the deed affect the type of fee transferred and do nothing to restrain the alienation of the property.

■ The Restatement of Property defines an estate in fee simple subject to a condition subsequent as "an otherwise effective conveyance of land," which: "(a) creates an estate in fee simple; and (b) provides that upon the occurrence of a stated event the conveyor or his successor in interest shall have the power to terminate the estate so created." (Restatement of Property § 45 (1936).) We have no doubt that such an estate was conveyed by defendant here.

Paragraph 4 of the deed conditions explicitly states that each of the conditions contained therein should be "construed as express conditions subsequent." That paragraph goes on to define a procedure for the grantor to reenter and retake title should the owner violate the conditions subsequently stated in the deed and also ignore warnings to correct such violations. Plaintiff has not disputed that her estate is a fee simple subject to a condition subsequent and has provided no authority for her argument that the conditions of her estate restrain alienation.

The conditions contained in the deed state that the land must be used for residential purposes only and that the existing home must be maintained. Plaintiff has failed to demonstrate how these conditions in any way prohibit or restrain her from transferring her property. Plaintiff can transfer exactly what she owns: a fee simple subject to conditions subsequent. Plaintiff claims the conditions prohibit her from "conveying the property to anyone who would seek to subdivide or otherwise develop the property for the highest and best use permitted by law." The deed does not prohibit her from conveying the prop-

erty to a developer. It prohibits a developer from using the property for anything other than a single-family residence until the year 2019. This is because plaintiff can convey no more than she owns. She cannot convey a fee simple absolute to a developer because she does not own one.

Plaintiff cannot expect the courts to give her more than she bargained for. There have been no allegations of fraud or misrepresentations that would have led plaintiff to believe that she received a fee simple absolute. This court must assume plaintiff purchased this property with full knowledge of the conditions.

Having determined that the deed conditions that characterize the type of estate held by plaintiff are not restraints on alienation, we now consider whether the right to repurchase, by itself, is an unreasonable restraint on alienation.

■ The rule against restraints on alienation has developed from the early idea that the power of alienation of real property is socially and economically desirable. This power is now regarded as an attribute of ownership and may not be restrained unreasonably. The supreme court summarized the law in Illinois regarding restraints in *Gale v. York Center Community Cooperative, Inc.* (1960), 21 Ill. 2d 86, 171 N.E.2d 30:

> "Thus, as a general rule, restraints on alienation are void ***. [Citation.] Such a restraint may be sustained, however, when it is reasonably designed to attain or encourage accepted social or economic ends. ***
>
> *** [I]t would appear that the crucial inquiry should be directed at the utility of the restraint as compared with the injurious consequences that will follow from its enforcement. If accepted social and economic considerations dictate that a partial restraint is reasonably necessary for their fulfillment, such a restraint should be sustained. *** In short, the law of property, like other areas of the law, is not a mathematical science but takes shape at the direction of social and economic forces in an ever changing society, and decisions should be made to turn on these considerations." *Gale*, 21 Ill. 2d at 92-93, 171 N.E.2d at 33.

In *Gale*, an association held title to the land in a subdivision on which members of the association had built their homes. The association had the right of first refusal for 12 months if a member wished to sell or transfer a membership and title to his or her home. After the member offered the membership to the association, the association had 12 months to exercise its right to purchase at either the proposed selling price, the price agreed upon between the member and the association, or the price determined by an impartial appraisal. The court upheld the right of first refusal, reasoning that the

utility of the restraints in the agreement outweighed any injurious consequences to the public. *Gale*, 21 Ill. 2d at 93, 171 N.E.2d at 33.

Likewise, in *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1, the court upheld as a reasonable restraint on alienation a provision in a mortgage that prohibited a sale, assignment, or transfer of any right without the written permission or consent of the mortgagee. The court reasoned that the underlying purpose of the restraint, which was to protect the security interest of the vendor, was a recognized valid purpose for which a restraint may be imposed. *Baker*, 61 Ill. 2d at 125, 333 N.E.2d at 4.

The Court of Appeals of New York upheld a right of first refusal similar to the right to repurchase at issue here. In *Metropolitan Transportation Authority v. Bruken Realty Corp.* (1986), 67 N.Y.2d 156, 492 N.E.2d 379, 501 N.Y.S.2d 306, the State of New York granted to a subsidiary corporation of Pennsylvania a right to purchase 12 lots in a freight yard if it was determined within the following 99 years that the property was no longer needed for New York's transportation operations. The instrument provided that the right had to be exercised within 90 days after New York decided to sell, and the purchase price would be determined by arbitration. The right to purchase was challenged as an unreasonable restraint on alienation. The court determined that the right of first refusal to purchase the lots did not violate the rule prohibiting unreasonable restraints on alienation because the terms of duration and price were reasonable and there was the beneficial purpose of permitting the parties to put the properties at issue to their maximum productive use for the public. *Metropolitan Transportation*, 67 N.Y.2d at 167, 492 N.E.2d at 384-85, 501 N.Y.2d at 311-12.

Although the benefits gained by the right of first refusal in *Metropolitan Transportation* were public and obviously of greater social value than the benefits flowing from the right in this case, the court's explanation and interpretation of the rule against unreasonable restraints apply equally here. The New York court stated:

> "Under the rule prohibiting unreasonable restraints on alienation, the validity of the preemptive right rests on its reasonableness, judged by its duration, price and purpose. The duration of the restraint is not measured by the life of the preemptive right. The rule does not condemn restrictions on transfer, i.e., provisions which postpone sale during the option period; it condemns only the 'effective *prohibition* against transferability itself.' [Citations.]" (*Metropolitan Transportation*, 67 N.Y.2d at 167, 492 N.E.2d at 385, 501 N.Y.S.2d at 312.)

Regarding the reasonableness of price, the court stated:

"[T]he method by which the price is set can be critical in determining whether a preemptive right unlawfully restrains transfers. When the holder has a right to purchase at a fixed price, or at a price less than that offered in the market, it is likely to involve a sacrifice by the owner if he wishes to transfer the property, thus becoming a far more serious interference with alienability [citations]. A preemptive right, however, usually will not be unlawful when conditioned on payment of market value or a sum equal to a third-party offer [citations]. Market value, in some instances, may be less than sale price, but a market value fixed by arbitrators compelled to consider the price a willing seller would accept from a willing buyer at the time of sale can hardly be unreasonable, as a matter of law ***." *Metropolitan Transportation*, 67 N.Y.2d at 167-68, 492 N.E.2d at 385, 501 N.Y.S.2d at 312.

■ The right to repurchase at issue here provides that the right must be exercised within 30 days from the date the grantor receives notice of the owner's intent to sell, transfer or assign. Price is determined by the lower price of either the offer from a third party or the market price determined by three appraisers. Both of these terms are reasonable. Plaintiff's argument that this process is burdensome and likely to prohibit the sale of the property is weakened by the fact that the land has been sold twice since this right was created.

Finally, the purpose of the right is also reasonable. Plaintiff's property is a little over 4.5 acres carved out of the middle of the original 30-acre plot of land. The boundaries are jagged and it does not seem that the whole of the original 30 acres could be put to effective use without the two parcels being reunited in the future. Although the purpose behind the restraint appears to be only personal, the effective use of personal property is an accepted social and economic end. We do not believe that the "injurious consequences" that would flow from the enforcement of this right of refusal outweigh the utility of the restraint. (*Gale*, 21 Ill. 2d at 92, 171 N.E.2d at 33.) Therefore, we hold that the right to repurchase is not an unreasonable restraint on alienation.

■ Plaintiff's final argument is that she is not bound by the right to repurchase. A covenant will be deemed to run with the land if: (1) the parties so intended, (2) the covenant touches and concerns the land, and (3) there is privity of estate between the parties. (*Streams Sports Club, Ltd. v. Richmond* (1983), 99 Ill. 2d 182, 188, 457 N.E.2d 1226, 1230.) The right to repurchase does not explicitly state that it is binding upon successors or assignees of the grantee. However, as our supreme court has stated:

"It is well established that in construing a deed, the overriding

concern is to ascertain and give effect to the intention of the parties. [Citation.] The deed should be construed so as to carry out this intention, as gathered from the instrument as a whole, and every word in the deed shall be considered and, if possible, given effect. [Citations.]" *Urbaitis v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 467, 575 N.E.2d 548, 551-52.

The language of the deed clearly indicates that the parties intended the right of repurchase to be binding on every grantee until the year 2019. Paragraph 6 of the right to repurchase states:

"A waiver by grantor, his successors and assigns, in any one instance of Grantor's right to repurchase *** shall not constitute a waiver of said right to repurchase in any subsequent instance. The right to repurchase *** shall inure to the benefit of Grantor, his successors and assigns, and shall survive the closing of each and every sale or assignment of the property during the period commencing with the date hereof and ending with the Right to Repurchase Expiration Date [as defined herein]."

The right clearly covers every sale or assignment until 2019. To hold otherwise would render the language in paragraph 6 meaningless. Therefore, the parties intended the right to repurchase to run with the land.

The second requirement is also met here. A covenant touches and concerns the land when it relates to the enjoyment or occupation of the land. (*La Salle National Trust v. Village of Westmont* (1994), 264 Ill. App. 3d 43, 71, 636 N.E.2d 1157, 1174.) Here, the right to repurchase, by its very terms, concerns the occupation of the land. It concerns the process by which the owner must sell the property. Also, the land itself, which is irregularly carved out of the original 30-acre parcel, indicates that the right to repurchase relates to the enjoyment of the land, in that it will be better enjoyed if joined with the remainder of the original 30-acre parcel.

Finally, it is not disputed that there is privity of estate. Therefore, the right to repurchase runs with the land and plaintiff is bound by it.

Accordingly, for the foregoing reasons the circuit court order granting summary judgment in favor of defendant is affirmed.

Affirmed.

WOLFSON and BRADEN, JJ., concur.

# APPENDIX
## "DEED CONDITIONS

1. For a period of thirty-nine (39) years from the date of the Deed, the use of the real property conveyed *** shall be restricted to single family residential purposes only; the Property shall not be used for any business, commercial or any other purpose inconsistent with a strictly single family residential use; only one detached, permanent private single family dwelling house, together with related and appurtenant outbuildings, shall be permitted on the Property and such dwelling house shall have at least three thousand (3,000 sq.') square feet of liveable floor area, exclusive of any basement, garage or unenclosed porch area;

2. The existing private single family dwelling house now located upon the Property shall be maintained and used solely as a private single family dwelling for a period of at least thirty-nine (39) years from the date of the Deed and during said period of time no other dwelling shall be erected or maintained upon the Property;

3. Trustee and the owner or owners from time to time of the beneficial interest in La Salle National Bank Trust Number 103081 created pursuant to Trust Agreement dated September 3, 1980 (singularly and collectively the 'Beneficiary') and their respective successors and assigns shall pay all real estate taxes applicable to the Property on or before the date(s) on which such real estate taxes become due;

4. Each and all of the conditions contained hereinabove shall, as between the parties hereto, their heirs, successors and assigns, be deemed to be and construed as express conditions subsequent. If Trustee, Beneficiary, their respective successors or assigns (such Trustee, Beneficiary, respective successors and assigns being collectively referred to herein as 'Grantee') shall neglect or fail to comply with any of such conditions on his (their) part to be performed, Grantor and his successors and assigns may at any time thereafter serve on Grantee a notice in writing, which shall also be recorded in the Office of the Recorder of Deeds for Cook County, Illinois specifying the particular or particulars of such default or breach. Should Grantee thereafter for a period of ninety (90) days (time being of the essence of this provision) from the date of such notice and recording fail to remedy fully such breach or default, then a further notice in writing, which shall also be recorded as above, shall be served upon Grantee by Grantor notifying Grantee that Grantor elects that the title to the Property shall revert to Grantor, and thereupon the title to the Property shall immediately and without necessity of any further action on the part of the Grantor, revert to and revest in Grantor.

5. Each and all of the conditions contained herein shall be deemed and construed to be continuing, and the extinguishment of any right of reversion for any breach shall not impair or affect any conditions so far as any future or other breach is concerned; acceptance of the Deed shall represent an acknowledgment by Grantee that no waiver of a breach of any of the conditions shall be construed to be a waiver of any other breach of the same or of other conditions; nor shall failure to enforce any one of such conditions, either by forfeiture or otherwise, be construed as a waiver of any other condition.

6. In addition to the remedies set forth above, Grantor, his successor and assignees, reserve the right and option in his sole discretion to enforce any of the conditions herein by injunction or any appropriate remedy at law or in equity.

7. No reversion or forfeiture shall render invalid or operate in any way against the lien of any mortgage, deed of trust or other lien given with respect to the Property in good faith, and for value; and on any such reversion or forfeiture, Grantor, his successors and assigns, shall take title to the Property subject to any such mortgage or deed of trust. Provided, however, that should any such mortgage or deed of trust be foreclosed, then the title acquired by such foreclosure, and the person or person[s] who thereupon and thereafter become the owner or owners of the conveyed premises, shall be subject to and bound by all the conditions contained herein; and further provided that Grantor, his successors and assigns, may enforce any such conditions by any other appropriate action in their sole and unconfined discretion.

8. It is expressly agreed that if any condition or provision herein contained, or any portion thereof, is invalid or void, such invalidity or voidness shall at Grantor's sole option, in no way affect this conveyance, or any other condition or provision hereof.

9. The purpose of the above conditions is: (i) to insure that the existing architectural value and quality of the existing dwelling on the Property and the character of its existing natural setting are preserved and protected; and (ii) to benefit any neighboring property which is owned or may be acquired by the Grantor, his successors and assigns, during the duration of such conditions and provisions.

10. No change in circumstances, including, but not limited to, changes in surrounding land uses or applicable zoning ordinances shall have any effect whatsoever upon the applicability, validity or enforceability of the above conditions, at any time and in any manner, may and shall only be changed by and with the written mutual consent of the Grantor or his successors and assigns and the owner or owners at the time of the Property."

"*GRANTOR'S RIGHT TO REPURCHASE*

1. Until the earlier to occur of the death of Grantor or that date which is thirty-nine (39) years after the date of the Deed (the 'Right to Repurchase Expiration Date'), Grantee shall not sell, assign, or otherwise transfer, all or any portion of the Property without first providing Grantor with an opportunity to purchase same for its then 'fair market value' as such term is hereafter defined; provided, however, that if a valid, arms length, *bona fide* real estate contract has been entered into by Grantee for all or any portion of the Property, then Grantor shall have the first right and option to purchase the property described in such contract at the lesser of the sale price set forth in the contract or its 'fair market value'.

2. Grantor shall be provided with written notice of any such sale, assignment or other transfer not less than sixty (60) days prior to the contemplated transfer. As used herein notice to Grantor shall be deemed to mean written notice, which notice shall include certified copies of any sale contract or other agreement pertaining to the transfer of all or any portion of the Property, together with the name, address and financial and character references of the proposed purchaser, assignee or transferee and such other information as Grantor may reasonably require, and such notice shall be deemed to have been given when actually received by the Grantor. Grantor shall have thirty (30) days from the date of receipt of such notice to exercise his first right and option to purchase. If any sale, assignment or other transfer failed to close within thirty (30) days of its contemplated closing date, the Property shall again become subject to Grantor's right of first refusal as herein provided.

3. In the event any or all of the Property is sold at a judicial or execution sale, the person or entity acquiring title through such sale shall, before taking possession of the property so sold, give forty-five (45) days' written notice to the Grantor of his intention so to do, whereupon the Grantor shall have an irrevocable option to purchase such Property at the same price for which it was sold at said sale. If said option is not exercised by the Grantor within said forty-five (45) days after receipt of such notice, it shall thereupon expire and said purchaser may thereafter take possession of said property. The Grantor shall be deemed to have exercised its option if he tenders the required sum of money to the purchaser within said forty-five (45) day period.

4. As used herein the term 'fair market value' shall be the current market value of the applicable portion of the Property as determined by the majority vote of three appraisers selected as follows. Grantor and the owner of the Property ('Owner') shall each

select a qualified real estate appraiser and the two appraisers thus selected shall choose another qualified real estate appraiser. Fifteen (15) days after the appointment of the third appraiser, the three appraisers shall determine, by majority vote, the fair market value of the portion of the Property the Owner contemplates selling, assigning or transferring. If the Property is subject to any liens or encumbrances of definite or ascertainable amounts, the fair market value of the Property shall be deemed to be the current market value reduced by the amount of any such liens or encumbrances. The three appraisers shall give written notice of their determination to Grantor and Owner.

5. As used herein, a 'sale' or 'assignment' of the Property shall be deemed to mean any conveyance or transfer of the ownership interest in the Property including, without limitation, the following:

    a. Execution and delivery of a Warranty Deed, Quit Claim Deed, Deed in Trust or Trustee's Deed;

    b. Assignment of the beneficial interest in La Salle National Bank Trust No. 103081 or any other land trust holding title to the Property;

    c. Transfer by gift of the property;

    d. Bequest of the beneficial interest or power of direction of any land trust holding title to the Property;

    e. Devise of the Property;

    f. Passing of title to the Property by intestacy pursuant to applicable statutes of descent and distribution; and

    g. Passing of title to the Property by judicial, execution, or foreclosure sale or the passing of title to the Property by Deed in lieu of foreclosure.

6. A waiver by Grantor, his successors and assigns, in any one instance of Grantor's right to repurchase the Property as set forth above shall not constitute a waiver of said right to repurchase in any subsequent instance. The right to repurchase contained herein shall inure to the benefit of Grantor and his successors and assigns and shall survive the closing of each and every sale or assignment of the Property during the period commencing with the date hereof and ending with the Right to Repurchase Expiration Date."