OPINION OF THE COURT
Louis C. Benza, J.
Defendant moves this court for an order pursuant to CPLR 3211 dismissing plaintiffs complaint or, alternatively, for summary judgment pursuant to CPLR 3212. Plaintiffs oppose all relief.
The underlying facts consist of the uncontested allegations contained in the complaint and documentary evidence submitted by defendants. Plaintiffs are each owners of separate interests in condominium units in a medical office building on land adjacent to defendant Memorial Hospital, also known as Albany Memorial Hospital. Defendant Shaker Properties, Inc., an affiliate of the hospital, was formed for the sole purpose of developing the medical office building condominiums. Plaintiff WFR Associates, Inc. and another entity, Columbia Development, formed a joint venture named Columbia Memorial Group to develop the medical office building. The hospital conveyed the land for the office building to Shaker Properties, who leased the land for a 99-year term to Columbia Memorial Group to build the office building. As such, Shaker Properties retained a reversionary interest in the premises. The deed from the hospital to Shaker Properties provided that, except as authorized by the hospital in writing, only “qualified persons” could own/occupy the premises. The deed defined “qualified person,” as relevant here, as a doctor or dentist who is an active/ provisional member, as defined in the hospital’s bylaws, or who has applied for such status. The hospital bylaws provided that to be considered an active member, a person must provide at least 25 patient contacts with the hospital per year. The condominium declarations, bylaws and offering plan (hereinafter condominium documents) also included these restrictions. Columbia Memorial Group filed the condominium documents in accordance with General Business Law article 23-A (also known *768 as the Martin Act), and thereafter sold units and assigned its interest in the lease to purchasers, including plaintiffs. The deeds to plaintiffs recited that the conveyance was subject to the condominium documents and the restrictions contained the hospital’s deed to Shaker Properties.
WFR purchased its interest in 1994 and leased its unit to physician tenants until 2001, when the unit became empty. In 2003, WFR sought written permission from the hospital to sell the unit to a dentist. The hospital refused permission because the dentist could not meet its bylaws regarding active medical staff members because he could not meet the required 25 annual patient contacts with the hospital. Plaintiffs allege that these provisions preclude dentists, physical therapists, spine surgeons and physicians who have practices which the hospital cannot treat, from owning or occupying the office building unless the hospital authorizes the nonconforming use, which consent the hospital is withholding in bad faith. With respect to plaintiff Alan Moskowitz, M.D., he purchased his unit in 1992, and relied on the hospital’s representation that it would support his spinal surgery practice. In 2001, the hospital terminated its facility for spine surgery. Moskowitz thereafter resigned from the hospital and relocated to Kansas. Since his relocation, Moskowitz has been unable to sell his unit.
In October 2003, plaintiffs commenced this action alleging that, through the restrictions contained in the hospital deed and condominium documents, defendants’ actions arise to an unreasonable restraint on alienation of an interest in real property (first and second causes of action), and violate the rule against perpetuities codified in EPTL 9-1.1 (third cause of action). Plaintiffs seek a judgment declaring the use and ownership restrictions are unreasonable and unenforceable or, alternatively, damages in the amount of the value of the units. Prior to answering, defendants brought this motion to dismiss based on documentary evidence, failure to state a cause of action, barred by the statute of limitations and laches or, alternatively, for summary judgment.
With respect to their motion to dismiss, defendants contend that plaintiffs failed to state a cause of action against defendants because they have no privity with defendants. Defendants are not sponsors of the condominium offering plan for the medical office building and, furthermore, the hospital is not the owner of the medical office building. Next, defendants argue that plaintiffs do not have standing because there is no private right of action under the Martin Act.
*769 As an initial matter, based on the submissions, the court determines that inasmuch as the hospital, as grantor, placed the restrictions in the stream of title and the condominium documents merely reflect the title requirement, and the hospital is enforcing the requirement, plaintiff may maintain this action against the hospital. Likewise, inasmuch as Shaker Properties retained a reversionary interest in the premises and required that all transfers/assignments comply with the condominium documents and the hospital deed, plaintiffs may maintain this action against it. Further, plaintiffs are not challenging the restrictions under the Martin Act but, rather, as a common-law unreasonable restraint of alienation and in violation of EPTL 9-1.1.[1] As such, based on defendants’ submissions, the court denies their motion to dismiss the complaint.[2]
Next, the court turns its attention to that part of defendants’ motion seeking summary judgment. Inasmuch as issue has not been joined in this matter, the court must dismiss the motion as premature (see, CPLR 3212 [a]; Historic Albany Found. v Breslin, 282 AD2d 981, 983 [2001]). The court, however, exercises its inherent discretion and converts the motion to dismiss into a motion for summary judgment (see, CPLR 3211 [c]). In so doing, the court notes that the notice to the parties required by the statute is unnecessary where the controversy involves “issues of law fully appreciated and argued by both sides” (Four Seasons Hotels v Vinnik, 127 AD2d 310, 320 [1987]; see, Historic Albany Found. v Breslin, supra). Here, the court determines that treatment pursuant to CPLR 3211 (c) is warranted because the matter involves solely questions of law. Further, upon searching the record and for the reasons to be stated, the court determines that plaintiffs are entitled to summary judgment striking the restrictive language from their deeds and condominium documents.
Turning to the merits, the court observes that “[underlying [the] rules restricting future dispositions of property is the *770 principle that it is socially undesirable for property to be inalienable for an unreasonable period of time. These rules thus seek ‘to ensure the productive use and development of property by its current beneficial owners by simplifying ownership, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability’ ” (Symphony Space v Pergola Props., 88 NY2d 466, 475 [1996], quoting Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 161 [1986]). The rules regarding future disposition^ of property are found statutorily and in the common law. The rule against perpetuities is codified in EPTL 9-1.1 and provides any estate in which the conveying instrument suspends the Absolute power of alienation for longer than lives in being at the creation of the estate plus 21 years is void (see, EPTL 9-1.1 [a] [2]) and “[n]o estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or moife lives in being at the creation of the estate and any period bf gestation involved” (EPTL 9-1.1 [b]). Inasmuch as the rule against perpetuities is an expression of the public policy, it cannot be waived by the consent of the parties, by agreement or eistoppel (see, Symphony Space v Pergola Props., 88 NY2d 466, 476 [1996]; 56 NY Jur 2d, Estates, Powers, and Restraints on Alienation § 390). In addition to these statutory proscriptions, common law prevents unreasonable restraint on alienation. “Unlike the statutory Rule against Perpetuities, which is measured ‘exclusively by the passage of time, the common-law rule evaluates the reasonableness of the restraint” (Symphony Space v Pergola Props., 88 NY2d 466, 476 [1996]; see, Wildenstein & Co. v Wallis, 79 NY2d 641, 648 [1992]). “Whether a restraint on the! disposition of property is unreasonable is a question of fact depending upon its purpose, duration and, where applicable, the designated method for fixing the purchase price” (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 161-162 [1986]). In a sense, “the rule against perpetuities limits the power of an owner to create future interests, whereas the rule against restraint on alienation prohibits the owner from creating provisions blocking his grantee from disposing of the property” (see, Witt v Disque, 79 AD2d 419, 424 [1981]).
Here, the court determines that the rule against perpetuities is not implicated as the hospital did not attempt to have power over the creation of future interest (id.). Rather, inasmuch as the hospital attempted to block grantees: from disposing freely of the condominium units, the court analyzes the dispute under *771 the common-law restraint on alienation and test of purpose and duration (see, Metropolitan Transp. Auth. v Bruken Realty Corp., supra). In doing so, the court must strike a balance between society’s interest in the free alienability of property and the rights of owners to direct future transfers (Wildenstein & Co. v Wallis, 79 NY2d 641, 648 [1992]).
The undisputed allegations in the complaint state that the purpose of the medical office building was to attract physicians to affiliate with the hospital. In order to maintain control over the occupants of the medical office building, the hospital required owners/occupants to be qualified members, i.e., active members of the hospital. The duration of the restriction encompassed the entire 99-year lease. The court determines as a matter of law that the qualified member restriction is a per se unreasonable restraint on alienation.
Initially, the court recognizes the hospital’s purpose of maintaining offices for physicians close to its facilities. Further, the court also recognizes that WFR was a sponsor of the condominium offering plan and is part of the joint venture, Columbia Memorial Group. However, whereas the rule against perpetuities cannot be waived by agreement of the parties, the court determines WFR’s involvement in the underlying transaction is only one factor to be considered in determining the reasonableness of the restriction. Inasmuch as all the unit owners of the condominium are restricted, including Moskowitz, the court must look to the overall reasonableness of the restriction. Next, the hospital has at least once changed who is a qualified person by discontinuing certain practice procedures. With respect to Moskowitz, the restriction is not only an unreasonable restraint on alienation, but borders on confiscatory. Moreover, the court observes that the hospital could have accomplished its purpose by less restrictive means, namely, including preemptive rights in the applicable documents (see, Metropolitan Transp. Auth. v Bruken Realty Corp., supra). Finally, the court notes that in light of the fact that the units of both plaintiffs have been vacant for a number of years and there is presently a 45% vacancy rate in the condominium, “ ‘the productive use and development of [this] property by its current beneficial owners’ ” is not being used (Symphony Space v Pergola Props., 88 NY2d 466, 475 [1996]). As such, the court determines that public policy overrides the hospital’s purpose and determines the restriction is an unreasonable restraint on alienation.
Accordingly, defendants’ motion to dismiss and, alternatively, for summary judgment is denied. Upon searching the record, *772 plaintiffs are awarded summary judgment and the court declares that the restrictions contained in the deeds and condominium documents are void and unenforceable.

. The court notes that the Martin Act is a disclosure statute, not an enforcement statute (Newler v Abrams, 164 AD2d 361, 364 [1990]). The mandatory role of the Attorney General under the act regarding “the filing of real estate conversion offering plans is to see to it that the informational purposes of the statute are met; if the disclosure in a submitted plan is adequate, respondent must accept the plan for filing, and if not, he must identify the deficiencies” (id.).

. Although defendants state, without authority or explanation, that plaintiffs are untimely or barred by the doctrine of laches from challenging the offering plan, the court is unpersuaded and notes that plaintiffs were not injured until such time as the ability to alienate the property was restricted.